## No. 6302.

BAYLY & POND VS. PAUL FOURCHY ET AL.

A defendant cannot be hold in damages on account of the publication of an alleged libelous letter, when the plaintiff fails to show that the letter was either written, or composed by the defendant, or that he caused it to be written, or composed, or assisted therein, or published it, or caused it to be published.

The sworn statement of a man of admitted truth that he did not write certain memoranda, will outweigh the conflicting testimony of witnesses, some of whom recognize a resemblance to his handwriting in that of the memoranda, and some of whom who do not.

Because one insurance company has agreed with a certain plaintiff to pay on its policy such proportion as might be adjudged in a certain suit due to him by *another* company on *its* policy, and, having an interest in the question, has employed counsel to assist in the investigation, is no reason to hold it bound in damages for slanderous matter in the pleadings of that other company, especially where it is shown not to have known of the charges made in the pleadings.

No client can be held in damages for any slanderous or libelous words uttered by his attorney-at-law.

APPEAL from the Fifth Judicial District Court, parish of Orleans. *Cullom, J.*

*Kennard, Howe & Prentiss* for plaintiffs and appellants.

*A. & W. Voorhies, Semmes & Mott,* for defendants and appellees.

---

Kennard, Howe & Prentiss, for plaintiffs and appellants, contended :

First—The verdict of the jury will not be disturbed unless "manifestly erroneous," and then only to correct such errors as the court can correct from the evidence in the record.  20 An. 455, 458 ; 22 An. 31; 6 L. 492 ; and many other decisions quoted in 1 Hennen's Dig. 92 (6), 1.

Second—When from the evidence in the record an error of the jury can be readily detected and corrected, this court will make the correction, and render such judgment as should have been made by the lower court.  29 An. 172 ; 25 An. 174 ; Perret vs. N. O. Times newspaper.

Third—The verdict of the jury is manifestly erroneous *only* as to the question of damages allowed.  The record contains *plenary proof* of large actual damages.

Fourth—That the *verdict* of the jury, so far as damages are concerned, is rather *a compromise than a verdict.*  See Falvey vs. Stamford, 11 English Reports; Moak's Notes, p. 146, (54) ; Bowman vs. Flower, 3 N. S. 641 ; 3 A. 69 ; 3 Johnson, 63 ; Sedgwick on Damages, 36 and 45 ; Domat du Droit Public, lib. 3 ; Merlin's Rep. *verbo injure ;* 2 L. 72 ; 5 R. 116.

Fifth—All who concur in the *authorship or publication* of a libel are alike responsible.  Hence a corporation may become liable for a

libel. Townshend on Slander and Libel, 2d ed. S. S. 115, 117 (and note 3, p. 148), 265, sec. 265, p. 460 ; 27 A. 367 ; 28 A. 435 ; 11 A. 206.

Thomas J. Semmes, contra, contended :

First—That the plaintiffs suing as a firm cannot recover damages for a *personal* libel. Townshend on Slander, sec. 262 ; 3 C. and P. 196 (14 E. L. p. 269).

Second—That where suit is brought for libel on the business interests of a firm, malice or willful purpose to injure is a necessary ingredient of the action. 57 N. Y. 125 ; 4 Queen's Bench, 70.

Third—That the answer was not instigated by the company or its president. It was filed by counsel on their own view of the facts. This is evidence of probable cause and want of malice, and protects the defendants. 62 Ill. 107 ; 25 Penn. 275 ; 8 A. 12 ; 11 A. 289 ; 9 A. 219.

Fourth—That a defendant cannot be held liable for averments pertinent to the issue in defense of a suit against them. 86 E. C. L. 126 ; 5 Queen's B. 94 ; 11 B. Monroe, 48 ; Marshall, 480 ; 3 Metcalf, 193 ; 4 N. Y. 91 ; 1 Denio, 43 ; 1 Harrington, 3 ; 4 Sneed, 11 ; 2 Strobhart, 447 ; 21 A. 376 ; Revised Stat. of La. 1870, section 123 ; 3 Ellis & Blackburn, 929 ; (77 E. C. L.) ; 8 M & W. 691 ; 4 Queen's B. 735.

Fifth—The office of the innuendo is to point the application, not enlarge the sense. Andrew vs. Woodmansee, 15 Wend. 235.

Sixth—The innuendo must allege that those who read the article understood it in the sense of the innuendo. 34 California, 58 ; 15 Wend. 235.

Seventh—The initiation of the libel cannot be proved by witnesses. 4 Wend. 325 ; 5 John, 211.

The opinion of the court was delivered by

SPENCER, J. Plaintiffs sue defendants for $100,000 damages, caused by certain alleged libelous and slanderous acts. The acts complained of are :

First. The publication in the New Orleans Bulletin of an article signed " S. A. Durand, adjuster," wherein it is alleged there are various slanderous and false charges made relative to plaintiffs and their business. Both defendants are charged with participation in this publication.

Second. The filing and publication by the defendant, the Merchants' Mutual Insurance Company, of an answer in the case of Bayly & Pond vs. the London and Lancashire Fire Insurance Company, in the United States Circuit Court, wherein plaintiffs are charged with arson and other high crimes.

The defendants filed a general denial, and the case was tried by a jury, which returned a verdict of one cent damages for plaintiffs against defendants *in solido.*

Plaintiffs appeal, and defendants pray an amendment of the judgment so as to reject plaintiffs' demand *in toto.*

The record is very voluminous, and much evidence was adduced pro and con.

We may simplify the case by premising that no serious attempt was made to hold the insurance company liable for the publication of the Durand letter ; nor is it pretended that Fourchy is personally liable for the slander alleged to have been contained in the answer filed as aforesaid in the Circuit Court. We have, therefore, two questions presented, viz.:

1. Is Fourchy responsible for the publication of the Durand letter, and if so, is it libelous ?

2. Is the insurance company liable and responsible for the answer filed in the Circuit Court ?

As regards the first question, under the view we have taken it will not be necessary to discuss whether the Durand letter did or did not contain libelous matter ; for the reason that we think the plaintiffs have failed to show that that letter was either writtten or composed by Fourchy, or that he caused it to be written or composed, or assisted therein, or published it, or caused it to be published. In saying that Fourchy did not write any part of the Durand article, we speak of the article proper, and not of the document annexed and referred to by Durand. The annexed document consisted entirely of extracts taken from the sworn statements of B. M. Pond, relative to the fire and the loss of Bayly & Pond thereby. The extract from Pond's testimony was procured by Durand from Mr. Fourchy, under circumstances which will be hereafter mentioned.

There is no dispute as to the fact that the manuscript letter delivered to and published by the Bulletin was signed by S. A. Durand, and that he, in person, carried it to the Bulletin office, and solicited its publication. Mr. Baker, the editor, seems to have objected to the article as being too severe, and undertook to make certain alterations in it, by erasures and interlineations. Durand, though not a regular employee of the Merchants' Insurance Company, frequented its office, having been sent from Atlanta, Ga., to act as an adjuster of the Bayly & Pond loss by another of the many companies involved therein.

While negotiations were pending between Durand and Baker, for the publication, they called together at the Merchants' Insurance Company's office, where they found Mr. Fourchy, the president of the company. Mr. Baker then mentioned to Mr. Fourchy the fact of Mr. Durand desiring him to publish the letter, stating that he thought it too severe. Fourchy replied that it was a matter with which he had nothing to do, and that he and Mr. Durand must act to suit themselves. After

some further talk between Baker and Durand, the former said to the latter: "If you will sign the paper with your own name, I will publish it." Durand took a pen and signed it, and they both left the office.

Mr. Fourchy (whom plaintiffs' counsel admits to be a man of undoubted truthfulness) swears that he had no share or concern in the writing or publication of the letter. That some time before its publication Durand brought to him 'copies of Pond's sworn statements above mentioned ; that he asked Durand's permission to make a copy of them ; . that he did make the copy, and put it in his desk ; that at a still later period Durand came into his office, and asked for the loan of the copy, and upon receiving it took it away and did not return it. This copy so borrowed, and in Fourchy's handwriting, was delivered by Durand to the Bulletin, as an annex to his letter. Mr. Fourchy swears that he never saw the Durand letter before its publication but one time, and that was momentarily, when Durand handed it to him and asked him to read it. He did read it, and at once returned it to Durand. He says that Durand had repeatedly urged upon the underwriters of Bayly & Pond the necessity of replying through the press to the various articles published assailing the insurance companies ; but that he absolutely refused to enter into any newspaper war. This statement of Mr. Fourchy's position at the time is confirmed by other witnesses. It seems that the president of one of the interested companies made a similar suggestion at one of their conferences ; but Mr. Fourchy promptly opposed the proposition.

The plaintiffs endeavored to show that certain interlineations and erasures, some in ink, and some in pencil, were in Fourchy's handwriting. One witness testified very confidently that the interlineations in ink were in defendant's hand; but Mr. Baker, the editor, at once exploded that theory by swearing that he had himself made them. Further effort to fix those in ink on the defendant seems then to have been abandoned, and resort was then had to experts, to show that those in pencil were of defendant's making. We have the original manuscript before us, and have, therefore, ample opportunity to appreciate the difficulty of this undertaking. The pencil markings are very indistinct, cramped, crowded, and some of them written on the back of the paper. Three experts thought they could trace a resemblance to Fourchy's handwriting in those pencilings. Per contra, one said that it was utterly impossible to do any thing of the sort. Many of the employees of the insurance company and of a bank, of both which Fourchy was president, were sworn, but they could recognize no resemblance to Fourchy's hand. Suffice it to say that in our opinion such evidence, when confronted by the positive oath and denial of an admittedly truthful man, weighs but little ; especially when it is shown by equally credible wit-

nesses that Fourchy had persistently refused to enter upon a discussion of the Bayly & Pond fire, through the newspapers.

We are satisfied that the paper which Welshans says Fourchy exhibited to him was the copy of B. M. Pond's answers on oath. He says it was headed "B. M. Pond on Bayly & Pond;" a very appropriate designation of that document, containing as it did, some rather startling statements as to the grocery business in New Orleans.

The effort to show that the Merchants' Insurance Company paid for the publication was equally abortive. So far, therefore, as Fourchy is concerned, the plaintiffs have failed to make out a case.

2. The facts relative to the second question are as follows : Bayly & Pond were heavy dealers in the grocery business, and were burned out in latter part of May, 1874. The loss was large. They had insurance in seventeen different companies, aggregating $197,000. They stated their loss at first, at $193,721 64; later, at $183,312 88, and finally, after deducting what was saved, at $181,608 05.

The insurance companies appointed a committee to examine into the matter, and they seem to have reached the conclusion that the loss was about $132,000. There was, in consequence, delay in adjusting the loss, and more or less discussion about the circumstances attending the fire. Some of plaintiffs' employees were arrested and charged with arson, but finally released. At length, an agreement was reached to the effect that the insurance companies would settle as for a loss of $160,000, each company to pay its *pro rata* on that basis. That Bayly & Pond should bring a suit against one or more of the companies, and establish their right to indemnity and the amount of their loss. If they established a greater sum than $160,000, the companies were to pay the additional sum. If less, the insured were to make restitution ; both parties reserving their full rights. The companies to abide the result of the suit to be instituted. Accordingly, Bayly & Pond brought suit in the United States Circuit Court, against the London and Lancashire Insurance Company, to recover on its policy. That company filed an answer, and alleged that Bayly & Pond had fired or caused to be fired their own premises, and had made up false and fraudulent statements of their losses, etc. It seems that several of the other companies interested employed counsel to assist the defense. Among these was the Merchants' Mutual Insurance Company. No pleadings were filed in its behalf, however. Its name nowhere appears as a party to that suit. It had simply agreed to pay, not any part of the sum due by the defendant in that suit, but the same proportion on its own policy as should be recovered of the defendant company.

It is affirmatively proven that the Merchants' Mutual Insurance Company gave its counsel no instruction whatever, as to the line of de-

fense to be adopted; certainly gave no instruction to charge the plaintiffs with arson and false swearing. It is equally certain that no paper or pleading was written or filed in the name of that company making such charges. The very most that can be said, therefore, is that the attorney of the Merchants' Insurance Company, *in its interests*, maintained *in the name of* the London and Lancashire Company, in oral argument, these charges against plaintiffs. The President of the Merchants' Mutual states that he never authorized his attorney to make such charges, and never saw or knew of the answer referred to until this suit was brought. Our statute declares explicitly (R. S. 123), that "no client or other person shall be held liable or responsible for any slanderous or libelous words uttered by his attorney-at-law," etc. Because the Merchants' Insurance Company had agreed to pay on its policy such proportion as might be adjudged due by another company on its policy, and, having an interest in the question, had employed counsel to assist in the investigation, is no reason to hold it ¡bound in damages for slanderous matter in the pleadings of that other company, especially where it is shown not to have known, much less directed, such slanders to be charged.

We think there should have been judgment for the defendants.

It is, therefore, ordered and decreed that the judgment appealed from is avoided and reversed, and it is now ordered and decreed that plaintiffs' demands be rejected at their costs in both courts.