The opinion of the court was delivered by
Nicholls, O. J.
The petition filed in this case is as follows:
i£ The petition of the State of Louisiana on the relation of Ashton Phelps and Page M. Baker, respectively president and chief editor of the Times-Democra't Publishing Company, which company is en *1251 gaged in the business of printing, publishing and circulating a daily-newspaper known as the New Orleans Times-Democrat, devoted to-the dissemination of the current news of the day, respectfully shows: That on 20th March, 1893, in a suit now pending in the Honorable the Civil District Court for the parish of Orleans, Division ‘ C ’ thereof, presided over by Hon. F. A. Monroe, Judge, No. 35,549 of the docket of said Civil District Court, they and each of them were served with a paper or proceeding calling upon and ordering them to show cause, on March 21, 1893, at 11 o’clock A. m , why they should not comply with certain requests on them made or be punished for contempt,, a copy of which is herein embodied in full in the words following,, to-wit:
“ State of Louisiana.
“ Civil District Court for the Parish of Orleans.

“Thomas Egan, Jr., called in Warranty.
“ On motion of Lazarus, Moore &' Lemle, of counsel for PeterFabacher, plaintiff herein, of E. W. Huntington and Horace L. Dufour, of counsel for Bryant & Mathers, defendants, and of White, Parlange & Saunders, of counsel for Thomas Egan, called in warwanty — and on giving this court to be informed and to understand that there is now pending before this court in this division a cause as-above entitled wherein Peter Fabacher is plaintiff, Bryant & Mathers are defendants, and Thomas Egan is defendant called in warranty of said Bryant & Mathers; that issue was jomed in said cause upon the main demand and upon the call in warranty; that after issue so-joined said cause was in due course of procedure fixed for trial; that upon the prayer of the plaintiff it was to be tried by jury.
“And on further giving the court to be informed and to understand that said case was regularly called for trial on Thursday, March 16, 1893, and a jury duly empaneled and sworn to try the issues in said' case — that the trial of said case was continued until Friday, March 17, and testimony administered for and on behalf of plaintiff in support of his demand, and that there were two witnesses sworn on said trial, to-wit: Peter Fabacher, the plaintiff, and John Mahone, a witness for and on behalf of the plaintiff; that prior to the adjournment on March 17, the jury being allowed their liberty and freedom, they *1252 were instructed by the court to hold no converse with reference to 'the case or the issues therein, and were especially instructed and directed not to allow any one to discuss the case which they the jury held ; s jurors under consideration for a verdict.
“And on further giving the court to be informed and to understand that the case was only partially tried, that all the witnesses for the plaintiff had not been heard, that none had been called for the defendants, Bryant & Mathers, and none for Thomas Egan, called in warranty, and that the case was continued for further consideration ■by the court and the jury until Tuesday March 2 L, 1893, at 11 o’clock .A. m., when the jury were by said court directed to be present in court to hear the further testimony in the case and to pass upon the issues therein.
“And on giving the court to be further informed and to understand that a newspaper known as the Times-Democrat, and published by the Times-Democrab Publishing Company, of which Ashton Phelps is president and Page M. Baker is the manager, did on Sunday, March 19, 1893, publish or cause to be published and circulated ■throughout the city of New Orleans the daily issue of said paper, in which was contained a commentary or criticism upon the case now ■pending before this court and the jury, and to give their opinion for the public’s perusal, of the relative positions of the parties to this controversy, and their comments upon the testimony of the witnesses who had testified in said case, and that the effect of the said publication was to operate to the injury of all the parties to said case, and was a discussion of the case out of the hearing of the court, and had the effect of influencing the judgment of the jurors, who have been •sworn to try the issues upon the evidence as adduced in court and upon the law as given to them by the court.
“And on further giving the coart to be informed and to understand that the statements contained in said article are in many respects not true and not justified by any evidence received in the case.
“ And on further giving the court to be informed and to understand that if in the said comments upon the case depending before the court and the jury the said newspaper was acting upon its own motion, it was guilty of a breach of the license and privilege of the press; and if acting from other motives they should disclose to the court at whose suggestion or instance the said publication was made in order that justice may be done, and that there should be no mis *1253 carriage of justice in consequence of said publication; that by their acts and doings in the premises they have been guilty of a flagrant-breach of the decorum of this court and are in contempt thereof.
“It is ordered that the Times Publishing Company, through its, manager, Page M. Baker, and its president, Ashton Phelps, do show cause on Tuesday, March 21, 1893, at 11 o’clock A. M., in open court, why the said manager and president should not disclose to the court the party at whose instance the said publication was-made, and from whom the information was received, and whether the said publication was paid for, and if so, by whom; or in default thereof, why they should not stand committed for contempt of the authority of this court under the statutes and laws of the State of Louisiana in such cases made and provided.”
Relators now further aver that in obedience to said order of court they did then and there appear in open court as ordered, and to said proceedings filed the following answers and 'return, to-wit, (also-herein embodied in full) :
“ State op Louisiana.
“ Civil District Court for the Parish of Orleans.

“And now into this honorable court, through the undersigned attorney, come Ashton Phelps, president of the Times-Demoeral Publishing Company, and Page M. Baker, chief editor and manager thereof, and for return to the rule herein taken- upon them to show-cause why they and each of them should not make certain disclo - sures in reference to the publication of an article in the Times - Democrat, and be punished as in contempt therefor, show—
“ 1. This honorable court is'without jurisdiction and power in the-premises to inquire into the matters set forth in said rule by this proceeding and in this collateral manner and ■ especially that the-facts and allegations in said rule set forth and the suggestions submitted to this court thereon do not import upon their face a charge for contempt of court or present a state of facts on which the power of this court to punish for contempt of its authority or dignity might arise, and any attempt on the part of this honorable court to inflict punishment would involve an unwarranted assumption and usurpa *1254 tion of judicial power not conferred by the Constitution and laws of this State.
‘ ‘ 2. Reserving the foregoing exception to the jurisdiction and power ■ of the court in the premises, these appearers plead and aver that the ■article referred to made part of this answer as Exhibit ‘A’ was published in the usual course of the business of printing the daily newspaper known as ‘The New Orleans Times-Democrat,’ as an item of news and an account of judicial proceedings then and there had in open court, the right to do which is privileged and guaranteed to respondent under express provisions of the Constitution of this State, subject only to liability or responsibility in damages to any and all persons who might suffer pecuniary or other loss in consequence of said or any publication, and the attempt herein to invoke the power of the court to punish for contempt the publishers of said article is in direct violation of the freedom of the press guaranteed by the laws and Constitutions of the State and of the United States, ■and especially of Art. 4 of the Constitution of the State, which provides that no law shall be passed ‘to abridge the freedom of the press.’
“ 3. That for these reasons this proceeding is absolutely null and void and unconstitutional as beyond the power and jurisdiction of the court in the manner and form and for the purpose attempted and should be dismissed.
“And appearers pray accordingly to be discharged and all proceedings stayed and for general relief.”
Relators now further show that notwithstanding said plea of juris•dietion to the court and said special plea that the matter set forth in said rule could not be held to be a contempt of the orders or persons •or dignity of the court, and were not punishable as such; that any attempt to hold the publication of said article a contempt of court involved an unwarranted usurpation of power in violation of the laws and Constitution of the State as aforesaid, his Honor E. A. Monroe, presiding over said Division ‘ C, ’ Civil District Court, did entertain -said proceedings and proceeded to trial thereof, and has rendered judgment thereon, a certified copy of which, marked Exhibit ‘ B,’ is filed as part hereof, decreeing that said publication constitutes a ■contempt of his court, but holding under advisement what penalty he shall inflict therefor. Relators show for the reasons hereinabove set forth, and in said answer pleaded specially adopted as part of .relator’s petition, said entire proceeding is null, void and unconstitu *1255 tional and all further action therein should be stayed, and said judge restrained and prohibited from further proceeding therein, and prohibited from inflicting the threatened penalty. Relators annex and mak^,part of this petition a certified copy of the rule, answer and judgment rendered therein embodied in Exhibit A and filed herewith.
“Relators show that they are without remedy except by means of the writs of certiorari and prohibition in the premises, to be issued by this honorable court in the just and constitutional exercise of its supervisory power over the judges of said Oivil District Oourt.
“ Wherefore, the subjoined affidavits considered, relators pray that writs of certiorari and prohibition issue herein, directed to the Hon.F. A. Monroe, judge presiding over Division ‘O’ of the Oivil District Court, parish of Orleans, commanding a record or transcript of all proceedings had, papers filed and action thereon, to be produced in this honorable court, in the matter of the proceedings for contempt, as in the foregoing petition set forth, against relators — that a writ of prohibition issue, and after due proceedings said writ be made peremptory and perpetual, and all proceedings under said rule for contempt had against these relators, as in the petition set forth, be declared absolutely'null and void and set aside, and all further proceedings thereunder perpetually stayed and prohibited; and relators pray that pending this proceeding a restraining order issue, staying and prohibiting all further orders and proceedings in the premises until the final determination of the cause.”
Accompanying the petition, as was stated therein, were copies of the article published in the Times-Democrat which gave rise to the proceedings (Exhibit “A”) and of the judge’s action taken at the hearing (Exhibit “B”). We insert the latter as part of the petition, but omit the former, as its consideration has become unnecessary under the conclusions reached by this court.
“Exhibit B.
“ Civil District Court for the Parish of Orleans.
■“Tuesday, the 21st day of March, 1893. Present, the Hon. Francis
A. Monroe, Judge.

“ In the matter of the rule herein taken upon the Times-Democrat Publishing Company, through its manager, Page M. Baker, and its *1256 president, Ashton Phelps, to show cause why said manager and president should not disclose to the court the party at whose instance a certain article which appeared in said Times-Democrat newspaper on Sunday, March 19, 1893, concerning the case in which said rule is taken and which is now on trial before a jury in this court, was published and from whom the information contained in said article was obtained, and whether said article was paid for, and if so by whom, or in default thereof why they, the defendants in rule, should not stand committed for contempt of this court; said defendants having appeared in person and through their counsel, and having made the disclosures asked for in said rule.
“ And the court having heard evidence and argument and being satisfied therefrom that said publication was the voluntary act of said Times-Democrat Publishing Company, for which said company and its officers are alone responsible, and the question being then submitted to the court by the counsel for the plaintiff and for the defendants respectively whether said company was guilty of contempt of court in publishing said article, and the court finding the law and the evidence to sustain the affirmative of this proposition and for the reasons orally assigned in open court, it is ordered that the Times-Democrat Publishing Company and Page M. Baker, manager of said company, be adjudged guilty of contempt of the authority of this court in authorizing, publishing and circulating in a newspaper published and circulated within the jurisdiction of this court an article the tendency and effect of which is necessarily to influence and forestall public opinion and the verdict of the jury on the case now being tried.
'‘And the court reserves its decision as to the penalty to be imposed for said contempt.”
Alternative writs having issued as prayed for, the judge of Division “ 0 ” filed a return or answer, in which he declared for cause why the writ of prohibition should not issue; ‘ ‘ that when the rule for contempt referred to in relators’ petition was called for trial the relators as defendants in said rule being personally present announced, either personally or through their counsel, their readiness to go to trial, as respondent supposed, upon the merits, and without objection that was heard by respondent to the form of proceeding; that the return to said rule was made orally, and the written return which now forms part of the record was filed by permission at a later date, and it was only *1257 after said rule had been disposed of, and upon inspecting said written return or a copy thereof, that respondent learned that said defendants objected to the form of the proceeding. Should it be the case that said objection was made at the trial, and upon-this point he wa® entirely willing to abide by the recollection of counsel for relators, then he averred now, as he would have ruled then, that the proceeding by rule was competent and proper, and upon this point he invoked the opinion of the court.” Further answering he averred “that the Civil District Court, of which he was the judge, was a court of record and of general jurisdiction, civil and probate; that said court was established by and derived its powers directly from the Constitution of the State, and that it became possessed, at the moment it was called into existence and without express grant, of such powers, with respect to questions of contempt, as might be necessary for the proper and effective exercise of the jurisdiction directly conferred upon it; that the Constitution conferred upon the Legislature by express grant, authority to limit the power of the courts to punish for contempt, but did not confer authority upon that branch of the government to divest the courts of such power, or even limit it to the extent of impairing the efficiency of the courts, nor had any such attempt been made. That no complaint was made that it was the intention of respondent to impose any penalty upon relators not authorized by statute, nor had he any intention to do so; that it was not claimed that the Civil District Court was without jurisdiction in the suit of Peter Fabacher vs. Bryant & Mathers for interfering with the trial of which relators had been adjudged guilty of contempt. That it was a civil action for the recovery of a sum of money exceeding 8100 between citizens of New Orleans, of which said court was fully seized of jurisdiction ratione materim and mtione personae, and said suit was in course of trial before a jury in said court; that the finding of said court, as contained in the judgment, sets forth that the defendants in rule were guilty of contempt in authorizing, publishing and circulating in a newspaper published and circulated within the jurisdiction of the court an article the tendency and effect of which was necessarily to influence and forestall public opinion, and the verdict of the jury in the case then being tried, viz.: the case of Fabacher vs. Bryant, and it was submitted on the authority of 35 An. 1194 and 1195, and 40 An. 434, that the Supreme Court should inquire no further. But should the *1258 court decide to pursue the inquiry, as suggested in relator’s petition, then it was submitted: (1) That the Civil District Court as a court of record and of general jurisdiction had the inherent power to punish all contempts, and that so far from attempting to limit such power to particular cases the Legislature had distinctly affirmed it with respect to all, and had limited only the penalty to be imposed. Code of Practice, Arts. 130 and 131.
(2) “That a publication in a newspaper, published and circulated within the jurisdiction of the court, calculated to ‘ prejudice mankind ’ and to influence the verdict of a jury in a cause pending before such court and jury was a contempt.”
Respondent next proceeded in his answer to argue in favor of the correctness of these two propositions.
It will be noticed that whilst relators were called into court to show cause why they should not disclose to the court the party at whose instance was made a certain publication, which had appeared in the Times-Democrat newspaper, and from whom the information therein contained was obtained, and whether the said publication was paid for, and if so by whom, or in default thereof to stand committed for contempt of the authority of the court, relators were declared by the court (in what is termed the judgment of the court) guilty of contempt “in authorizing, publishing and circulating in a newspaper published and circulated within the jurisdiction of the court an article the tendency and effect of which was necessarily to influence and forestall public opinion and the verdict of the jury in the case then being tried.”
It will be further noticed that the court declares that relators “had appeared in person and through their counsel had made the disclosures called for,” the logical result of which compliance on their part should have been their immediate discharge.
Instead of adhering to the issue apparently raised in their exception, that they could not be ruled into court for the purpose of creating and being punished for contempt for an act which they had not yet but which they might .possibly subsequently commit, in other words contending that the act charged must have preceded and not be one which would follow the issuing of the rule, relators appear to have acquiesced both in the right of the court to require the particular disclosures demanded and in its right to proceed in the manner which it did. Not only this — they have ignored the fact that the *1259 court has pronounced them guilty of contempt for an act separate, distinct and entirely different from that which was made the subject of possible complaint in the rule and they do not claim that on compliance with the requirements of the rule it should have been discharged.
The district judge in his judgment says that on trial of the rule the counsel for the plaintiffs and defendants respectively submitted to the court whether the Times-Democrat Publishing Company was or was not guilty of contempt in publishing the article, and finding that the law and the evidence sustained the affirmative of that proposition he adjudged the Times-Democrat Publishing Company, and Page M. Baker, manager of that company, guilty of contempt of the ■authority of his court in so doing.
Relators in their brief say “ they are the responsible agents for the Times-Democrat newspaper, and about to be punished for a contempt for publishing, pending trial, the article annexed to relators’ petition, which the respondent judge held to .be an act ‘interfering with the trial of the cause,’ and a publication tending to prejudice mankind in regard to judicial investigations pending before him, and •especially as tending to influence the verdict of a jury in a cause pending, and therefore a contempt of court, and punishable as such; that it was not contended or found that the article contained anything that is offensive per se or a libel, an insult, or any reflection ■on the court, its officers, the jury, or any person or instrumentality whatever called into action in the progress of the trial or the impartial administration of justice; that no objection was made or urged to the form of proceedings; that any wording or phraseology in the ‘ written return’ to ‘ the rule for contempt’ must be and were intended to be construed with reference to the substantial defence of want of jurisdiction and power in the premises to punish as for contempt the act as charged on the face of the papers. It is a plea to the jurisdiction and an exception of no cause of action. It is not intended to raise a question as to the manner in which the defendants were brought into court.”
They then proceed to argue what they claim to be the issues before this court, saying that ‘ ‘ the first and controlling issue in the case is the immunity claimed under the constitutional guarantee of the ‘ freedom of the press,’ and that the next suggests the inquiry of the limit of exclusive power of the trial court, or, in other words, *1260 what issues of law or fact will this court review or control under the supervisory power which it exercises by virtue of Article 90 of the Constitution in a contestation of this kind.”
It would appear that all parties in the lower court consented to look to the recitals which preceded the “ ordering ” part of the rule and not to the “ ordering” part itself as fixing the issues of the case, and that it was tried from that standpoint.
We greatly disapprove of this departure from the actual pleadings, in a matter in regard to which we are called upon to exercise our supervisory powers.
The actual contention of the respective parties become uncertain, and such consent proceedings almost always result in a looseness of practice difficult to be dealt with properly.
We understand the relators to have contended in the lower court, as they do here—
1. That under the Constitutional guarantees of the freedom of the press, the publishers of newspapers generally are secured from liability for contempt of court for articles published in them in the usual course of the business of printing the daily newspaper as an item of news giving an account of judicial proceedings had in open court, the right to do so being privileged and secured under express constitutional provisions in this State, subject only to liability or responsibility in damages to any and all persons who might suffer pecuniary or other loss in consequence of any publication.
2. That the Civil District Court, though created by the Constitution, is an “inferior court,” and as such has not at common law power to punish for a constructive contempt; that its power is limited to the cases embraced in Articles 130 and 131 of the Code of Practice, the first of which declares that “ all judges possess the power necessary for exercise of their respective jurisdictions though the same be not expressly given by law,” and the second that “ the judges of the Supreme, District, and Parish Courts have the power to punish all contempts of their authority by fine not exceeding fifty dollars and imprisonment for a period not exceeding ten days for each offence of that kind,” and that the power there conferred is limited to do that which is “necessary” for the exercise of the court’s jurisdiction.
*1261 3. That if a newspaper be liable for contempt for a publication, the matter published must be so direct in its intent and effect as to come within the class of contempts consisting of disobedience to or interference with orders or otherwise directly obstructing the court in the exercise of its functions; that if the publication embodies general comment only, without manifest intent to hinder or interfere, and especially without intent to interfere, with the trial in a particular manner, it does not constitute a contempt even at common law, and if it might be so held, it is in this State and country invested with immunity by constitutional provisions in regard to the freedom of the press; that the particular article in question was not of such a character as has just been described as furnishing a ground for and was not a contempt.
4. That the article in question not being of such a character, the District Court was without power or authority to declare or deal with it as such, and under our supervisory powers we are authorized through writs of prohibition and certiorari to review and undo the •action of the lower court in that respect as an absolute nullity.
We shall deal with the propositions submitted a little out of their order, taking the second one first, as it strikes at the power and authority and jurisdiction of the lower court.
The Civil District Court is a court of record of original general jurisdiction, and if a direct legislative grant from the Legislature were necessary in this State to confer upon it such powers as have been usually held to be inherent in all such courts it will be found in Art. 130 of the Code of Practice. That article pointedly recognizes and declares the existence in courts of all the powers necessary for the exercise of their respective jurisdictions, inherently and independently of express law, and by necessary implication it gives legislative sanction to the exercise of such powers, and the particular power of the District Courts to punish for contempt was (as if to place that matter beyond the possibility of dispute) specially mentioned in Art. 131. That article is general in its terms save as to the punishment to be inflicted, and is no limitation upon the article which precedes it except in that respect. Art. 130 recognizes the existence of all the powers necessary to the jurisdiction without attempting to define what such powers are or should be. The word “ jurisdiction” in the article is used in a broad not a restricted sense, and means everything necessary for the maintenance of rightful power and authority.
*1262 The statutes of the State are enacted not simply for the defining of rights and obligations, but for their protection and enforcement, and the very object of the organization of courts is through their instrumentality to make certain that justice should be administered by due process of law without denial or unnecessary delay, and with strict impartiality. The purpose of their creation would be crippled and defeated if they were to be unable of themselves, in cases pending within their jurisdiction, to guard the pure and unbiased administration of justice. It is no less the duty of the courts to see that the law be faithfully applied in cases before them than it is the duty of the executive to see that the laws should be generally executed. Brown in his work on Jurisdiction (Sec. 115a) says that “ the power-to punish for contempts is inherent in all courts, that its existence is essential to the preservation of order in judicial proceedings.” If this inherent power exists for the preservation of mere order, for-how much greater reason should it exist to pi’otect the fountains of justice from being poisoned and the courts themselves from being brought into contempt and disrepute.
The Supreme Court of Mississippi remarks on the power to fine- and imprison for contempt that “ from the earliest history of jurisprudence it has been regarded as a necesssary incident and attribute of a court, without which it could no more exist than without a judge. It is a power inherent in all courts of record and coexisting with them by the wise provisions of the common law. A court without the power effectually to protect itself against the assaults of the lawless, or to enforce its orders, judgments or decrees, would be a disgrace to the legislation and a stigma upon the age which invented it. In' this country all courts derive their authority from the people and hold it in trust for their security and benefit.” Wells on Jurisdiction, page 179; Watson vs. Williams, 36 Miss. 341.
In the correctness of these views we fully concur.
We are of the opinion that the Civil District Court a court of record having original general jurisdiction, is not an “ inferior court” in the technical sense of that term; that it has the power and authority to punish for contempts of court; that though the proceedings in matters of constructive differ from those of actual con-tempts, the power of the District Court under proper proceedings extends to both.
The claim of the relators that, under the constitutional guarantees *1263 of the freedom of the press, “ publishers of newspapers are secured from liability for punishment as for contempt of court for articles published in the usual course of the business of printing the daily newspaper as an item of ‘news giving an account of judicial proceedings had in open court, the right to do so being privileged and secured under express constitutional provisions in this State, subject only to liability or responsibility in damages to any and all persons who might suffer pecuniary or other loss in consequence of any publication,” is not true as a general proposition.
The general rule as stated by Wells (Wells on Jurisdiction, page 191) is that “ where a publication being read by jurors and attendants on the courts would have a tendency to interfere with the proper and unbiased administration of the law in pending cases it may be adjudged a contempt, and accordingly punished.”
Where an article of that character has been published it is a great mistake to suppose that the resulting liability or responsibility is limited to a civil action for damages by the individuals who might be prejudiced thereby. Irreparable injury not to be compensated by money would make such a limited remedy totally inadequate to meet the requirements of the situation. Such a contention ignores totally the consideration of the question as affecting the public morals and public interests.
Relators, themselves, in their brief, admit the incorrectness of the broad proposition advanced, forthey say: “that a contempt may be committed by publication, notwithstanding the guaranteed ‘ freedom’ of the press is conceded, but there must be somewhere a limit to the power of the courts in that regard, and as the limit must be found by determining the scope and significance of the constitutional provision, it can not be an arbitrary one, resting solely on the discretion of the particular judge in each case. There is a rule of limitation to be deduced; it is the function, the duty, the high privilege of the court of last resort to find and establish it.”
This statement is an abandonment of the claim that all publications of judicial proceedings in newspapers are privileged, viewed from the standpoint of “contempt proceedings,” and the substitution in lieu thereof of the contention that some publications are so privileged. If some be not so protected, it necessarily follows that when a particular article is charged as being of the latter kind the court to *1264 which such a question is submitted must examine and determine the character of the publication.
Such an examination would often carry with it the investigation of and application of facts to the particular case, and a denial of the correctness of the conclusions reached in the matter by the judge would not extend to a denial of the power to determine; this power would be admitted — the proper exercise of the power would be alone at issue.
The third and fourth contentions of the relators may be considered together. They claim that in this particular case the article published in the Times-Democrat which gave rise to these proceedings was not such an article as could be made the basis for a contempt of court, and that this being the case this court in the exercise of its supervisory powers can review the judgment of the District Court pronouncing otherwise — that it can and should set aside that judgment as being null and void.
That this court under some circumstances has the authority under its supervisory powers to review and annul under writs of prohibition and certiorari the action of a District Court in ordering the imprisonment of the publishers of a newspaper on a charge of contempt of his court is undoubted. The case of the State ex rel. Liversey vs. Judge, 34 An. 741, was of that character, but it was one differing radically from that before us. The question of the freedom and liberty of the press was there presented, but under an entirely different state of facts. The syllabus of the case concisely states the points raised and determined, as follows:
“By our bill of rights the ‘press’ is free from all censorship of what shall be published and entirely exempt from control in advance as to what shall appear in print. Courts in this State are therefore absolutely without authority to control in advance or to restrain by injunction the liberty enjoyed by the ‘ press ’ to publish even what may be of a libellous nature, the party injured having his remedy after the publication.
“ The court having no power to grant such an injunction it was an absolute nullity and the condemnation for contempt falls with the injunction the moment such nullity has been pronounced by this ■court, which has supervision in cases like the one at bar.”
The doctrine there stated was unquestionably correct, but the ■court was very careful to say in the body of its decision, “ We are to *1265 construe and give effect to our provision precisely as if it declared, in the language of the Oonstitution of Minnesota, ‘ the liberty of the press shall forever remain inviolate and all persons may freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of such right.’ ”
It was precisely the abuse of the right which was charged in the present case against the defendants.
When that charge was made, the article complained of was presented to the court as a piece of evidence in the ease in connection with testimony adduced, and upon the evidence as a whole the court adjudged relators guilty. As the subject matter before the court was within its jurisdiction, as some publications were liable to be adjudged an abuse of the liberty of the press and some not — as the conclusions to be reached in the ease were dependent upon the evidence to be submitted and the case was so decided, this court is not to go behind the judgment and inquire into its correctness on that evidence.
Relators, in their brief, say of their exceptions: “ It is a plea to the jurisdiction and an exception of 1 no cause’ of action.”
The jurisdictional point was not well taken, and the ruling upon the exception of “no cause of action” is not reviewable.in this proceeding. State ex rel. Reid vs. Fournet, 45 An. State ex rel. Barthet vs. Houston, 40 An. 434. State ex rel. O’Malley vs. Judge, 35 An. 1197. State ex rel. Brown vs. Houston, 35 An. 1194.
For the reasons herein assigned it is hereby ordered, adjudged and decreed that the provisional writs issued herein be set aside and relators’ demand and application be rejected and dismissed at their costs.
Mr. Justice Parlange takes no part.
Rehearing refused.