Statement of the Case.
NICHOLLS, J.
Plaintiff alleged that he is a member of the police force of the city of New Orleans, and has been for a number of years. That he was a member of the same on Sunday, February 12, 1905, at which time defendant, Anthony Fabacher, made and caused to be made a statement for publication in the Daily Picayune, a daily newspaper published in this city, with a large and influential circulation not only in this city, but also in other cities, as follows, to wit:
“Tony Fabacher Jailed.
“Said He Couldn’t Afford to Pay the Police Tariff.
“ T was too cheap for the police on this beat, so they picked me out and pulled my place, and let every other saloon in the city run wide open.
“ ‘They wanted money, and didn’t mention the amount.
“ ‘They got some and -handed it back to me, saying that they did’nt know I was so - cheap. Then they laid for me and fixed me. I will put the matter before the police commissioners to-morrow.’
“This is the statement of Tony Fabacher, whose saloon on St. Charles street was selected by the police force on New Orleans, as about ,the only one to be pulled. Hundreds of other saloons in the city were running wide open,! many of them not even taking the trouble to lock their front doors.
“Patrolmen Claverie and Kilroy were the two astute police who managed to find out that it was possible to get a drink on the inside of Fabacher’s place. Their work in pulling this place exhausted them for the day, and they were unable to find a dozen other saloons that were open within a block of the one that was closed up.
“Fabacher had his front doors closed and a man on watch outside. The two police followed a crowd into the side door, pushing it open. They arrested the bartender and closed the place up. The two men on the night force also became solicitous about Mr. Fabacher’s place being open, and spent a large part of their time last evening hiding behind a sign on the opposite side of the street, waiting for another chance at this saloon. They also were unable, to see other places in the same block which were wide open.
“Mr. Fabacher said that he did not know just how much the two policemen wanted, but he understood it was $5 each. He said that he could not afford to pay this amount to every policeman that passed his place in twenty-four hours, and intended to tell the board of police commissioners so.”
“Petitioner further represents that the defendant referred to the petitioner as one of the officers designated in the article published in the Daily Picayune in its issue of Monday, February 13, 1905.
“Petitioner further represents that the said defendant has continued daily to make statements to the effect that petitioner had demanded a bribe from him, had accepted money from him, and had returned the same, all of which was malicious, false, and untrue.
“Petitioner represents that the said defendant caused to be published in the Times Democrat of this city, another daily newspaper of large circulation in this city and elsewhere, an article entitled ‘Fabacher Stands Pat,’ a copy of which article is hereto attached and made part hereof, and also caused to be published in the said Daily Picayune and Times Democrat and m the Daily News, Daily Item, Daily States, New Orleans Bee, and German Gazette, under dales succeeding February 13, 1905, all daily newspapers of this city and having- large circulations in this section and elsewhere, libelous statements against petitioner to the effect that petitioner had demanded a bribe from him and had accepted money from him and had returned the same to him, in order that he, the said defendant, might be permitted to violate what is commonly known as the ‘Sunday Law,’ being Act No. 18, p. 28, of the Legislature of the state of Louisiana of 1886, prohibiting saloons or other places of business from keeping open on Sundays, and prescribing penalties for the violations thereof. Petitioner further avers that the said defendant was, on the said 12th of February, 1905, conducting a saloon at No. 419 St. Charles street of this city, and was amenable *47 to the provisions of the said act, should the said place be opened on Sunday, and under the law it was the mandatory duty of petitioner, as an officer thereof, to arrest and incarcerate the said defendant, if the said saloon had been opened during the said day, as petitioner was in charge of the district in which the said saloon was located on the said date aforesaid.
“Petitioner represents that in the said articles published by the authority of the defendant in the Times Democrat and Picayune appeared the following statements, to wit:
“ ‘Tony Fabacher Jailed. Said He Could Not Afford to Pay the Police Tariff. “I was too cheap for the police on this beat, so they picked me out and pulled my place, and let every other saloon in the city run wide open.
“ ‘ “They wanted money and didn’t mention the amount. They got some, and handed it back, saying they did not know I was so - cheap. They laid for me and fixed me._ I will put the matter before the board of police commissioners to-morrow.”
“ ‘Mr. Fabacher said he did not know just how much the two policemen wanted, but be understood it was $5 each. He said he could not afford to pay this to every policeman who passed his place in twenty-four hours, and intended to tell the board of police commissioners so.’
“Petitioner represents that he was charged with conduct unbecoming an officer and with accepting a bribe by the Hon. John Journee, inspector of police, on Friday, February 17, 1905, a»d, after due hearing, was acquitted of said dharges aforesaid.
' “Petitioner represents that, on account of the charges so made against petitioner by defendant, petitioner had been seriously damaged by the newspaper publications aforesaid, made by authority of the said defendant, which continued u,p to the present trial of the case, before the inspector of police on February 17, 1905, and on several dates succeeding, as will appear from the several publications, which are all made part hereof for greater certainty, and annexed hereto as part of this petition.
“Petitioner represents that the said statements of the defendant concerning petitioner were made with a view of injuring him in his good standing in the community, or destroying his reputation and causing him to lose his position on the police force of this city, and the same have caused him serious damage, for all of which defendant is responsible to him in the sum hereinabove claimed.
“Petitioner represents that he had been damaged as above enumerated iu the sum of five thousand dollars, being the damage sustained by him to his reputation and good name, and in the sufferings endured by him to bis mortification and anxiety incident to the publications and the trial before the inspector of police as aforesaid; and in the sum of five thousand dollars as punitory and exemplary damages, which the defendant should be compelled to pay by reason of his maliciousness in causing petitioner to be accused of the charges aforesaid, when, at the time of the making thereof the defendant knew that the same were not true, but were nevertheless uttered by the defendant with a view of causing petitioner the injuries aforesaid.
“Petitioner avers amicable demand without avail.
“In view of the premises, petitioner prayed that the defendant, Anthony Fabacher, be duly cited to appear and an wer this petition, and, after due proceedings had, that there be judgment in favor of petitioner and against the defendant, Anthony Fabacher, in the full sum of ten thousand dollars, with legal interest from date of judgment, and all costs thereof; and for all necessary orders and general relief.”
Defendant answered, pleading first the general denial. Further answering, he averred that he is the proprietor of the saloon, No. 419 St. Charles street. That the publications referred to in plaintiff’s petition as having appeared in the Daily Picayune, Times Democrat, Daily News, Daily Item, Daily States, New Orleans Bee, and German Gazette are substantially correct, but defendant denied that he procured the publication thereof in the said papers, or that he was actuated by any malicious intent.
In view of the premises, defendant prayed that plaintiff’s demand be rejected at his costs. Further, defendant prayed for all such general and special relief as the nature of the case requires and law and equity grant.
The district court rendered judgment dismissing plaintiff’s suit and decreeing that the parties pay the costs which they respectively incurred. Plaintiff has appealed.
Opinion.
Defendant has answered the appeal, praying that the plaintiff be condemned to pay the entire costs.
The plaintiff charges the defendant with having “made and caused to be made for publication” the newspaper articles which are copied in his petition. The case was decided upon testimony taken on the trial admitted without objection.
*49 Instead of bringing his action against the newspapers which published the articles, and the reporters who wrote them, the plaintiff selected defendant as the object of his attack, assuming that in point of fact the defendant had made to the reporters the statements attributed to him.
The defendant appears in no good light before the court, as he concededly gave money to a police officer in order to induce him to violate with impunity what is known as the “Sunday Law.” The officer returned the money to the defendant through his (defendant’s) manager, and on the next Sunday, accompanied by the plaintiff, he arrested the defendant for keeping his saloon, No. 419 St. Charles street, open on that day. He (Fabacher) was tried, convicted, and fined.
The fact of his arrest attracted a, good deal of attention, and was made the occasion of the publication of the newspaper articles referred to. A reporter of the Picayune called upon the defendant to ascertain the circumstances under which the arrest was made. The defendant admits in his testimony that he was called upon by this reporter and that he answered some questions which were propounded to him in regard to the matter, but he denied under oath that he had solicited the interview or that he had made the statements which were attributed to him by the reporters. He testified that he had nothing to do with the publications made in the Picayune or the Times Democrat.
The following questions were propounded to and answers given by the defendant:
“Q. The Picayune reporter interviewed you?
“A. Yes, sir.
“Q. Wliat you stated to him was correct?
“A. Yes, sir.
“Q. You were interviewed by the Times Democrat also?
“A. Yes, sir. ■
“Q. And what you stated to him was the truth?
“A. Y«is, sir.
“Q. Did you state all that was said in the papers?
“A. No, sir ”
He specially denied on the stand as a witness that he had stated that Officer Claverie had ever asked for. or received any money from him, or that he had ever offered any money to him.
At the opening of his case, plaintiff placed the inspector of police upon the stand, who stated that in reading the articles in the morning dailies he had interviewed Mr. Fabaeher relative to the matter, and asked him whether he was the author of the publication; that he answered that he had been interviewed by the reporters, but he had nothing to do with it; he said he did not have any charge to make, and had nothing to say; that the papers sometimes published more than was really said; he (the inspector of police) ordered Capt. Cooper to make the charge from information received.
On the trial of that case, Claverie was acquitted, and he is still on the force.
The plaintiff has failed to establish that defendant “made or caused to be made” the publications complained of. Bayley & Pond v. Fourchy, 32 La. Ann. 136.
In Payson v. McComber, 3 Allen (Mass.) 69, the defendant’s answer denied the speaking of the words and justified them by alleging their truth. The plaintiff contended that the two answers were inconsistent with each other, and that an allegation of the truth of the words was an admission that the defendant spoke them.
But the court was of the opinion that these defenses were not inconsistent with each other, for it did not necessarily follow that the defendant spoke the words because they are true, nor was an allegation of their truth on the record an admission that the defendant uttered them verbally; that different consistent defenses might be separately stated in the same answer.
In Farnan v. Childs, 66 Ill. 546, defendant filed the plea of not guilty and several pleas of justification, and, among others, one jus *51 tifying the speaking of the words, charging plaintiff with having “seduced divers and. sundry girls in his office,” but there was no evidence in the record that the defendant ever spoke the objectionable words. The court instructed the jury that if defendant had filed pleas justifying the speaking of the words charging plaintiff with having seduced “divers and sundry girls,” and made no effort to prove the same, the jury might take that fact in aggravation of damages.
Defendant urged that the instruction was erroneous because they were told:
“If defendant made no effort to prove the truth of his plea, that fact should be taken into consideration in aggravation of damages.”
The ground of the objection was:
“Defendant was not bound to prove the truth of his plea until plaintiff had proven that he had spoken the slanderous words.”
On the contrary, it is urged that the plea itself was a solemn admission on the record defendant had spoken the words, and plaintiff was not bound to prove that which was admitted by the pleadings. The etourt said:
“Counsel cites in support of his views Jackson v. Stetson, 15 Mass. 48; Alderman v. French, 1 Pick. (Mass.) 1, 11 Am. Dec. 114. While those authorities support the position assumed, they are in conflict with the authorities on that question. The rule of practice adopted in those cases was subsequently changed by an act of the Legislature. Hix v. Drury, 5 Pick. (Mass.) 296.
“The doctrine uniformly held is that where a party has pleaded (as he may in this state) as many pleas as he may deem necessary for his defense, each plea stands by itself and forms a distinct issue, and it is not an objection that some are inconsistent with each other, for instance, where the general issue is pleaded, and with it a plea in bar of tender or the statute of limitation.
“One plea cannot be given in evidence to sustain another, or to sustain the allegations in declaration, any more than a plea of justification in an action for slander can be made the ground of an independent action for a reiteration of the slanderous words. If the plea is to be considered for any purpose, it must be considered altogether, and then it constitutes a complete defense to the action.
“The rule that seems to be the best supported by reason and authority is that where, in an action for slander, the plea of not guilty is filed notwithstanding the plea of justification, the plaintiff must prove the speaking of the words alleged, and the pleas cannot be used to convict defendant, nor will he be bound to make good his defense until he is proven guilty. Kirk v. Norvill et al., 1 D. & E. 118 ; Whitaker v. Freeman, 12 N. C. 271, Fed. Cas. No. 17,527a; Cilley v. Jenness, 2 N. H. 87; Montgomery v. Richardson et al., 5 Car. & Payne, 247; Harrison v. McMorns, 5 Tanant, 233.”
In Buhler v. Wentworth, 17 Barb. (N. Y.) 649, the syllabus of the opinion reads:
“In an action for slander the defendant may deny the speaking of the words, and, as an additional defense, set up by way of justification that the words if spoken were true.”
This court has on several occasions declared that in an action of slander the general issue and a plea of justification as pleaded could not stand together. Skillman v. Downs, 10 La. 106; Miller v. Roy, 10 La. Ann. 231; Williams v. McManus, 38 La. Ann. 161, 58 Am. Rep. 171; Harrison v. Jurgielewiez, 28 La. Ann. 239; Hawkins v. New Orleans Printing & Publishing Co., 29 La. Ann. 134; Young v. Jackson, 37 La. Ann. 810.
This case comes before the court under special circumstances. As we have stated before, the case was tried without reference to the pleadings, and evidence was allowed to be introduced by each party in support of its claims and pretensions without objection.
The answer of the defendant is not as carefully worded and guarded as it should be, and is open to some criticism on that score. Defendant evidently did not intend to plead by way of confession and avoidance, and in justification of any language or acts of his own. While truthfully denying “that he made or caused to be made” the newspaper publications, he, in pleadings in this case, and after the articles had been published, went to the defense of the newspapers and their reporters in criticising and reflecting upon the course pursued by the police force in reference to the enforcement of the Sunday law. What responsibility (if any) he incurred by this course, we are not *53 called on to say, for that particular course is not made the basis of this action.
What plaintiff seeks to recover damages for is the action of the defendant before and at the time of the publications, and not that done by him since. State ex rel. Phelps v. Judge, 45 La. Ann. 1258, 14 South. 310, 40 Am. St. Rep. 282; State ex rel. Duffy v. Civil District Court, 112 La. 194, 36 South. 315.
The district court erred in throwing part of the costs on the defendant, and its action in that respect must be corrected as prayed for in the answer to the appeal; otherwise the judgment is correct.
For the reasons herein assigned, the judgment appealed from' is amended so as to throw the entire costs of the case upon the appellant, and, as so amended, the judgment is affirmed.