## No. 4847.

JACOB HAWKINS vs. NEW ORLEANS PRINTING AND PUBLISHING COMPANY.

Where special defenses have been set up in an answer, in conjunction with the plea of the general issue, evidence is admissible to establish the special defenses.

In an action for damages for slander, libel, or defamation, the defendant may plead the truth of what he has said, or written, and prove it by any legal evidence.

Where "perjury" has been charged in an alleged libel, it is for the jury to determine, by a scrutiny of the whole publication, whether the word was used by defendant in a popular sense, or as charging the technical crime of perjury.

The bribery of a juror is good ground for granting a new trial, and it may be proved like any other fact.

APPEAL from the Fourth District Court, parish of Orleans. *Lynch,* J. Trial by jury.

*H. C. Dibble, Cotton & Levy,* and *Rice & Whitaker,* for plaintiff and appellee.

*H. N. Ogden* and *Randolph, Singleton & Browne,* for defendants.

ON MOTION TO DISMISS.

The opinion of the court was delivered by

TALIAFERRO, J. The grounds on which the appellee mainly relies in support of his motion to dismiss the appeal in this case are that the transcript does not contain a true record of the proceedings had on the

trial of the case in the court below, but on the contrary that it is erased, interlined, and mutilated in various places referred to by pages in the transcript; that these defects in the transcript are imputable solely to the appellant.

An attentive examination of the parts of the record containing these alleged erasures, interlineations, and mutilations does not convince us that the transcript is not a true and correct copy of the original record of the proceedings had in the case on its trial in the court below. Two certificates of the clerk and his affidavit besides attest its correctness. It seems that *ex industria* the clerk has aimed to present an exact *fac simile*, a photograph, of the record, which in some of its parts presents, on that account, an anomalous appearance.

And we will here remark that the clerk, in making out the transcript in this manner, has made a departure from the established usage which has nothing to commend it as an improvement and nothing to render its adoption desirable. We, however, assume that this transcript represents correctly the alterations, erasures, interlineations, etc., as they appear in the original. There is nothing that we find to induce the belief that the original record has been altered, or that the transcript is not a correct copy of it.

It is therefore ordered that the motion to dismiss be overruled.

---

### On the Merits.

The opinion of the court was delivered by

MANNING, C. J. In this suit the plaintiff seeks to recover one hundred thousand dollars as damages for an alleged libel, published by the defendant in the Daily Picayune newspaper. An article styled "the Usurper Hawkins" contains the alleged libelous matter. It was published on the twenty-third of February, 1873. So much of it as is necessary for the decision of the issues now before us is here transcribed:

"Jacob Hawkins is not a legal judge, nor is the so-called Superior District Court, over which he assumes to preside, a legal court. The investigation before the Senate Committee on Privileges and Elections has brought to the knowledge of the whole people of the United States what was before perfectly well known to the people of this State. All the members of that committee, in their preliminary report, agreed with remarkable unanimity that the Kellogg government was simply a usurpation without foundation in law. They unanimously declared that the Lynch Returning Board never had the official returns of the election before them, and never had any legal or competent evidence before them to enable them to declare what the results of that election were."

The words particularly complained of as injurious to plaintiff are:

"But why do our people, with these two reports before them, continue to endure that monstrous party creation, the Superior District Court? How much longer will they quietly submit to the decrees of a bastard judge of a bastard court created by a bastard Legislature? Have they any respect for that compound of perfidy and perjury, Jacob Hawkins, who assumes to preside over the court that was specially created to reward him for violating his duty and his oath as a returning officer? How much longer will the members of our bar continue to recognize this illegal tribunal and its perjured judge?"

The defendant pleaded the general issue in the usual form, by denying "all and singular the allegations of the petitioner, except in so far as they may be hereinafter admitted," and then specially justified with ample averments. Some of these are that the article was written and published under a profound sense of duty to the public; that the matters therein charged were universally believed to be true in this community; that in printing and publishing the article respondent was not originating, nor was he giving currency to a rumor, but merely as a public journal narrating facts already well known and accepted as true by the public; that the whole subject-matter had been submitted to a committee of the United States Senate, and that committee had, after a full investigation, found in substance the facts to be as stated in said article; that it was apparent upon the face of the article that it was not intended to produce any new impression upon the public mind as to the character of the plaintiff, but undertook merely to narrate what had already been accepted by the public as true, and upon those accepted truths to advise the public as to its duty at a critical period in the history of the State; and, finally, that every statement contained in the article was supported by the strongest proof, and believed by respondent to be true as published, and that the statements as published were true.

The issues were submitted to a jury, who awarded eighteen thousand dollars to the plaintiff as damages. From the judgment of the court, in accordance with that verdict, the defendant appeals.

There are twenty-two bills of exception to the ruling of the judge below. We shall notice as many of them as may be required at this time.

The defendant offered several witnesses to prove the truth of the statements made in the published article, and objection was made to the reception of this proof on the ground that by pleading the general denial the defendant had lost the right to justify, or, in other words, that the plea of the general issue precluded the plea of justification and any other defense. It has long been a settled rule under our Code of Practice that the general issue is waived by a special plea, and that the latter always controls the former so far as relates to the matter specially

pleaded. Lesseps vs. Wicks, 12 An. 739. When there is a special defense relied on, the answer always opens with the plea of general denial, and is followed by the special pleas more or less elaborated, as it usually closes with the prayer for general relief, and it would not be more extraordinary to hold that the prayer for general relief excludes all other prayers of the answer, than that the plea of the general issue once made, accompanied by special defenses, excludes all evidence in support of those defenses. The *gravamen* of plaintiff's complaint is, not that defendant made a publication concerning him, but that the publication thus made was false, malicious, and libelous. The defendant averred that it was not false, but true, not malicious, but made with good intent, not libelous, but the reiteration of what was commonly believed to be true. He should have been allowed to substantiate these averments.

In support of the averment relative to the conclusions of the United States Senate committee, the defendant offered in evidence the published report of that committee. One of the statements in the publication in the Picayune related to the participation of the plaintiff in the acts of the Returning Board of that date as one of its members. The alleged libel as to that participation, and the nature and quality of the plaintiff's conduct as a sworn member of that board, was justified in the answer as founded upon that report, and the evidence was offered to show that the publication was free from malice, and was only a reproduction of what that committee had upon examination pronounced to be true. In that light, and for that purpose, the evidence should have been received.

So, also, of the rejection of the various witnesses who were offered to sustain different phases of the plea of justification. Whatever was pertinent under that plea, and in its support, should have been received. By express law, the defendant in a civil suit for slander, defamation, or for a libel may plead in justification the truth of the slanderous, defamatory, or libelous words, and may maintain that plea by all legal evidence. R. S. 1870, sec. 3640.

The plaintiff insisted that the expression "compound of perfidy and perjury" as applied to himself must be held to mean that he had been guilty of the technical crime of perjury, and that no evidence could be received except that which would show him to have been guilty of that crime, as defined in the statutes. The modern doctrine upon that subject is that the question to be left to the jury is not what the defendant meant by the words he spoke, but what reasonable men hearing the words would understand by them. Townsend on Slander and Libel, 173, note. To call a man a thief is not actionable unless it is intended to impute to him a felony; unexplained, it will be construed in a feloni-

ous sense, but is subject to explanation by the context. *Idem.* 197. The jury should have been instructed to take the publication in its entirety, and to consider from its phraseology whether it was the technical crime of perjury or the popular sense of that word that was meant, or that was or would be understood by readers as having been meant by the utterer of the alleged libel. Trimble vs. Moore, 2 La. 577; Miller vs. Holstein, 16 La. 395.

The defendant offered the plaintiff as a witness, and was proceeding to interrogate him, when objection was made that he could only be interrogated on facts and articles. Formerly a party to a suit could only be interrogated by questions in writing annexed to a petition or answer in which one of the parties to the suit prays that the other be ordered to respond under oath, in order to make use of his answers as testimony in support of his demand, or to aid him in his defense. Code of Practice, article 347 *et seq.* In 1868 the competent witness in all civil matters was declared to be a person of proper understanding (Acts of 1868, p. 269), and since that act parties to suits have been uniformly held to be competent witnesses either in their own behalf or in behalf of their adversaries. The only exception to this uniform ruling that we know of is that of the court *a qua* on the trial below.

Many witnesses were offered to prove the truth of the alleged libelous matter, and, among them, James Longstreet. The bill of exception in this instance states that the object of the testimony was to rebut the presumption of malice, but the court held it inadmissible, because "under the general issue defendant can not prove his charges." The exclusion of most of the testimony of defendant rested upon the ruling first made as to the effect of pleading the general issue, the judge having ignored the special pleas made in the same answer, and to which the pleader specifically referred as limiting the general denial. It is only when the defendant confines himself to that plea, and altogether omits that of justification, that evidence of the truth of the alleged libelous matter is excluded. Miller vs. Roy, 10 An. 231. The error of the first ruling entailed the errors of all subsequent ones, and thus totally deprived the defendant upon any hearing upon the merits of his defense.

The case was given to the jury on Friday, June 19, and at six o'clock p. m. of that day, on being brought into court at their request, the foreman reported their inability to agree, whereupon the court ordered the sheriff to remand them to their room, there to remain under his charge until they do agree. At three o'clock p. m. of the ensuing day they were again brought into court, and their foreman made the same report, and the same order was made by the judge. At nine o'clock p. m. of that day the verdict was rendered.

A motion for a new trial was made on the ground that two jurors had

been bribed—one of them, by name Haworth, before the cause was submitted, and the other, D'Aquin, on the afternoon of Saturday after they had been for a few moments in court to announce their non-agreement. This bribery was alleged to be by the plaintiff through an agent. The crier of the court, George Walker, was the alleged agent. It was sworn that he slipped into D'Aquin's hand a small piece of paper, while the juror with the others was going to their room from the court-room, and whispered to him not to open the paper until he had returned to the jury-room. It was D'Aquin that had said aloud to the judge that an agreement upon a verdict was impossible. The writing upon the slip was:

"Mr. D'Aquin, if you go with the majority there is a five-hundred-dollar note at the store for you.

"YOUR FRIEND ON CHARTRES STREET."

D'Aquin had been during the jury's deliberations a pronounced favorer of a verdict for the defendant, and upon his return to the jury-room on Saturday afternoon the impossibility of agreement, of which he had given assurance to the court, was suddenly converted into a hearty acquiescence in the views of the majority. All the facts of this affidavit are said to have been obtained by the confession of Walker, the crier of the court, as well as of the juror himself.

The other juror was alleged to have been bribed by one Thomas Kavanaugh, acting as agent of plaintiff, during the progress of the trial, twenty-five dollars being paid cash and one hundred and twenty-five dollars more to be paid as the purchase price of a verdict for twenty-five thousand dollars in favor of plaintiff.

Upon the hearing of the motion for a new trial, supported by affidavits setting forth *in extenso* the occasions and circumstances of the bribery, with the names of the parties, additional evidence was offered to sustain the statements made in the motion and the affidavits. Objection was made to its reception for the reason that a juror should not be permitted to impeach his own verdict, and as to the witnesses, other than the jurors, that their statements would be hearsay. The presiding judge was then offered as a witness to prove that Walker, the crier of the court, admitted to him (the judge) that he did slip into the juror's hand the writing offering a specific bribe on the occasion described, and on objection by plaintiff the court ruled out the testimony.

The textual provisions of our Code declare that a new trial shall be granted if it be shown that the jury has been bribed. The applicant for the new trial must annex to his motion his affidavit of the facts alleged in proof of the bribery. Code of Practice, arts. 560, 561; Morgan vs. Bell, 4 Martin, 619; Trehan vs. McManus, 2 La. 216. It has often been held that a juror can not be heard to impeach his own verdict,

140          SUPREME COURT OF LOUISIANA,

Hawkins vs. New Orleans Printing and Publishing Company.

because the admission of his testimony to that end would open the door to tamperers, and might be the means to destroy a verdict which could be used by a juror who had become dissatisfied with it. Its effect is to defeat his own solemn act under oath. Campbell vs. Miller, 1 N. S. 514; Cive vs. Rightor, 11 La. 141; State vs. Caldwell, 3 An. 435; Hilliard on New Trials, 196. But it has also been held that the testimony of a juror may be received to prove misconduct of the officer having them in charge. Thomas vs. Chapman, 45 Barbour (N. Y.) 98. And in the special instances of bribery as the alleged misconduct of the jury, the affidavit of a juror touching that misconduct was held admissible. Ritchie vs. Walbrooke, 7 Serj. & Rawle, 458; Spurck vs. Crook, 19 Illinois, 426. And this from the necessity of the case. The bribery is known, usually, to none but the party using it, or his agent, and his victim. The fear of detection and its consequences imposes secrecy upon the instruments employed for its accomplishment. Without the power to interrogate them, the exposure of the bribery would, in most instances, be impossible. But we do not find it necessary to decide authoritatively now whether that particular misconduct of a juror, i. e., bribery, can be elicited by his own testimony. In this case the testimony of the crier to the court was offered to prove his own successful attempt to bribe one of the jurors, and, upon ascertaining that the crier had disappeared, the presiding judge was offered to prove the crier's admission that he had slipped the piece of paper in D'Aquin's hand, while the jury were yet undecided, and while the officer was accompanying them to their room for renewed deliberation.

The refusal of the judge to grant a new trial under these circumstances is not merely an error in law. It is official misconduct, and reprehensible in all its phases. It was his duty to have ordered a new trial *ex mero motu.* A judge is the conservator of his court. The conservation of its purity is his first and highest function. It should not require the interposition of counsel, or of any subordinate officer of the court, to move the judge promptly to repair an injury to his own administration of justice, effected by such foul means. The knowledge of the stain on that day and by that act stamped upon his court was brought home to him by protracted and repeated appeals for its removal. His own knowledge of the facts was attempted to be elicited, and, instead of making that knowledge the basis of an instant and voluntary order which should wrest from the briber the fruits of his wrongful act, he permitted the verdict which he knew to have been bought, to tarnish the records until the appeal to a higher tribunal shall have removed the opprobrium thus cast upon the law, and those who administer it.

Nearly four years have passed since the verdict was rendered in this case, and we may reproduce here the indignant expressions of Lord

Denman, in rendering his celebrated judgment in O'Connell vs. the Queen: "If it is possible that such a practice as that which has taken place in the present instance should be allowed to pass without a remedy, trial by jury, itself, instead of being a security to persons who are accused, will be a delusion, a mockery, and a snare."

It is therefore ordered, adjudged, and decreed that the verdict of the jury be set aside, and the judgment rendered thereon be avoided and reversed, and that this cause be remanded to the lower court to be tried anew under the instructions contained in this opinion; and it is also ordered and decreed that the defendant have and recover of Martha J. Hawkins, the legal representative of the succession of the deceased plaintiff, the costs of this appeal.