298 So.2d 761 (1974)
STATE of Louisiana, Appellee,
v.
Randy A. LEDET, Appellant.
No. 54375.
Supreme Court of Louisiana.
June 10, 1974.
Rehearing Denied August 30, 1974.
*762 William M. Bass, Robert L. Morris, Houma, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., James L. Alcock, Asst. Dist. Atty., for appellee.
TATE, Justice.
The defendant Ledet was convicted of murder, La.R.S. 14:30, and sentenced to life imprisonment at hard labor. He relies upon fifteen perfected bills upon his appeal. Substantial contentions of error are presented, however, only by Bill No. 15 (concerning note-taking by a juror during the trial) and by Bill Nos. 13 and 14 (a reference by the prosecutor in his closing argument to the defendant's prior criminal record).
*763 1. Bill No. 15: Note-Taking by a Juror During Trial
By motion for a new trial, the defendant alleged that, after the verdict, he had discovered that one of the trial jurors had taken notes during the trial and referred to them during the jury deliberations, in violation of La.C.Cr.P. art. 793 (quoted in Footnote 4 below). Evidence was taken which proved that such a violation had occurred. Bill No. 15 was taken to the trial court's holding that the violation constituted harmless error and to its denial of a new trial.
Two jurors testified at the hearing on the motion. The state did not object to their testifying.
Their testimony shows:
The juror Gros took notes on a paper towel during the second and final day of the trial, the day that the defendant's witnesses testified. The notes, which he recopied in a notebook after the trial, are in evidence. In the main, they constitute a critical commentary upon the defendant's own testimony when he took the stand, pointing out its inconsistencies with other testimony[1] or other unfavorable aspects[2] of it.
The two jurors testified that the notes were not shown to anyone, although the juror Gros had referred to them occasionally to verify his own memory of the evidence. Further, on one or two instances, Gros used the notes in the deliberation to verify other jurors' recollection of the testimony.[3] However, Gros testified, his statements and votes during the jury deliberations were based upon his independent recollection, not the notes. Both juror-witnesses testified that the notes were not used to settle disputes, as well as to their belief that the reference to the notes did not influence the deliberations nor the verdict of guilty.
In denying the motion, the trial court held that the note-taking and note-reference was harmless error. The court pointed out that the note-taking had been done surreptitiously, without any notice of it by the trial judge, prosecutor, or defense *764 counsel, and that the evidence of the two jurors indicated that the verdict was reached, as required by the code article, upon the memory of the jurors rather than being at all based upon the notes.
The unobjected-to evidence thus shows without contradiction a substantial violation of the provision of Article 793 of the Code of Criminal Procedure: "A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. * * *"[4] (Italics ours.)
A majority of this court nevertheless concludes that no reversible error is shown. Although reference to notes by a juror is prohibited, we do not find that such use of notes by a juryman is inherently prejudicial or violative of any fundamental right of an accused designed to aid him to obtain a fair trial. In the absence of connivance by the state, we are unwilling to hold that the use of notes by a juror is, per se, "prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right", La.C.Cr.P. art. 921, so as to be reversible error under such cited code article.
We are influenced in reaching this conclusion by: (a) the preponderance of national authority and informed legal thought, which does not regard note-taking as inherently prejudicial to an accused; and (b) the policy of La.R.S. 15:470 (quoted in Footnote 9 below), which forbids receipt of testimony by a juror after a verdict as to misconduct within the jury or which impeaches the jury verdict. As will be stated, we find the policy established by the latter statute outweighs and is more important by far than the policy set forth by the code article here violated.
As to (a):
Note-taking by jurors and reference to them during jury deliberations is either permissible or expressly authorized by statute or court-rule in at least twenty-six American state jurisdictions and in the federal courts. It is prohibited in only four states, including Louisiana; but even in them we could find only one reversal resulting from such note-taking[5]most of the few decisions on the point refused to reverse unless prejudice and gross misconduct was clearly shown.
See: Petroff, The Practice of Jury Note TakingMisconduct, Right, or Privilege?, 18 Okla.L.Rev. 125 (1965); Note, 46 Chicago-Kent Law Review (1970); Annotation, Jury's Trial Notes, 14 A.L.R.3d 831 (1967).
The essential reason for the prohibition is that a note-taker may unduly influence the jury by reference to the notes and that, if the notes are inaccurate and incomplete, the parties before the court may be prejudiced by the jurymen's acceptance of them in preference to actual testimony heard by them and their individual memory, if any, of it.[6] On the other hand, the jurisdictions *765 which reject the prohibition regard note-taking as a legitimate aid to memory and dismiss the contrary considerations as anachronisms from times when few men were literate.[7]
The American Bar Association Standard for Criminal Justice Relating to Trial by Jury approves the taking and use of notes by trial jurors.[8] We regard this authoritative statement, resulting from study by leading scholars, prosecutors, and practitioners in the field of criminal justice, as at least persuasive to the conclusion that the use of notes by a juror is not inherently prejudicial to an accused nor such gross misconduct on his part as should nullify a jury verdict.
Thus, although Article 793 prohibits the reference to notes by a juror, a discovery of the violation of this article after a verdict is reached does not necessarily constitute prejudicial and reversible error. Nor are we here faced with a situation where the state encouraged an open violation, nor where the trial court refused over defense objection to prohibit compliance with this legislative direction, so that reversal is the only way to enforce this legislative mandate.
As to (b):
We are also influenced in our conclusion by the more important policy considerations set forth by La.R.S. 15:470. This enactment provides that no juror "is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach ... any verdict" of a jury on which he served.[9]
The underlying policy reasons behind this statute relate to the public interest in finality of verdicts and in encouraging freedom and frankness in jury discussion in reaching them. To permit post-verdict judicial examination of the mental processes by which the jury reached its verdict would lead to indefinite prolongation of the trial process by the losing party. To permit revelation, after the verdict, of the jury debate would inhibit it during the discussion.
See, e. g.: McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); Renz v. Texas and Pacific Railway Co., 138 So.2d 114, 122-125 (La.App. 3d Cir. 1962) (summarizing Louisiana jurisprudence), certiorari denied (La.1962); 8 Wigmore on Evidence, Section 2353 (McNaughton rev. 1961). (Louisiana decisions *766 are summarized at 8 Wigmore, Section 2354, p. 706.)
A majority of this court has recently decided that the policy of this statute is so important that, if objected to, the testimony of trial jurors is inadmissible to prove that notes were referred to during jury deliberations.[10] This amounts, at the least, to a determination that the policy reasons underlying the protection of jury privacy outweigh those incorporated in the statute forbidding reference by jurors to notes.
A majority of American jurisdictions have adopted an interpretation of the principle incorporated by La.R.S. 15:470 to the effect that no testimony by a juror will be received, at least if objected to, as to jury conduct, not even testimony proving misconduct prohibited by statute. Wigmore, cited above, at Section 2354. All jurisdictions agree that the principle forbids evidence as to the mental processes and reasons of the jury in reaching a decision.
Nevertheless, a substantial minority follow the variation represented by the "Iowa rule"[11] to the effect that the policy was not intended to prevent proof of "overt acts" constituting illegal conduct or a violation of fundamental statutory requirements for jury deliberation of importance equivalent to jury-privacy, but unprovable except by the testimony of the jurors themselves. Wigmore, cited above, at Section 2353. Wigmore himself was of the opinion that the Iowa rule was preferable to the iron-clad exclusion of juror testimony even as to objective acts constituting gross misconduct. So is the weight of modern critical commentary. See, e. g.: Note, 53 Marquette L.Rev. 258 (1970); Note, 22 U. of Miami L.Rev. 729 (1968); Note, 56 Col.L.Rev. 952 (1956). The American Bar Association Standards of Criminal Justice Relating to Trial by Jury, Standard 5.7 adopts this approach.[12]
In Louisiana, the decision of State v. Riggs, 110 La. 509, 34 So. 655 (1903), held that the testimony of a juror may be used to prove an overt act (in the case, intimidation of a juror within the jury room), an overt act being defined as one "done in pursuance of a criminal design." 110 La. at 516, 34 So. at 657. In an earlier decision, bribery of members of the jury was at issue; in ordering a new trial, this court stated: "Without the power to interrogate them [the jurors], the exposure of the bribery would, in most instances, be impossible. But we do not find it necessary to decide authoritatively now whether that particular misconduct of a juror, i. e., bribery can be elicited by his own testimony. In this case, the testimony of the crier to the court was offered to prove his own successful attempt to bribe one of the jurors * * *." Hawkins v. New Orleans Printing & Publishing Co., 29 La.Ann. 134, 140 (1877).
Likewise, in State v. Kifer, 186 La. 674, 173 So. 169 (1937), this court permitted testimony by grand jurors to impeach their *767 indictment. They testified that the district attorney was present during their deliberation, which is prohibited by law. In permitting this testimony, we pointed out that only the jurors themselves could prove this infringement of this protection for the accused.
We concluded that the policy of the statute forbidding jurors to impeach their act was outweighed by "[the] public policy... that no one should interfere with the deliberations of a grand jury during its findings." 173 So. at 173. Construing the two statutory prohibitions together, this court did not believe it to be the legislative intent both to forbid the district attorney to be present and also to forbid proof through the jurors (the only means possible) of such illegal presence.
In the present instance, no objection was made to the testimony of the jurors that one of them referred to his notes. Nevertheless, we do not believe a different result is required than if objection had been made and sustained. The use of notes is prohibited but, as previously noted, is not inherently prejudicial to the accused nor to his right to a fair trial. Aside from the lack of evidence that reference to such notes had any effect on the jury's deliberations resulting in its verdict, testimony by members of the jury is under the statute (La.R.S. 15:470) incompetent and inadmissible to prove the mental processes by which they reached their decision.
Essentially, therefore, we hold that the mere fact that notes were taken and referred to by a member of the jury does not, if proved, constitute reversible error. We reach this conclusion also because, as compared with the statutory policy prohibiting note-reference, the statutory policy is of far greater importance that testimony of jurors, by which alone such note-reference could be proved, is incompetent and inadmissible to prove misconduct by members of the jury which impeaches their verdict.
2. Bill Nos. 13 and 14: Prosecutor's Reference in Closing Argument to the Defendant's Prior Criminal Record
The defendant contends that the trial court committed error by not ordering the mandatory mistrial required by La.C.Cr.P. art. 770, when the district attorney refers "directly or indirectly" before the jury to "another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible." La. C.Cr.P. art. 770(2).
In closing argument, the district attorney, in comparing the credibility of the defendant against that of the state witnesses, referred to him as "a three-time loser". The trial court denied the defendant's motion for a mistrial under Article 770. The reference to the defendant's criminal record, in an argument limiting such reference to its pertinence in weighing the defendant's credibility, did not, under the literal terms of Article 770 refer to other crimes "as to which evidence is not admissible."
The defendant had taken the stand in his own defense during the trial. When the state cross-examined him, it elicited from him that he had been convicted of burglary three times. A witness may be asked as to his conviction of a crime for the limited purpose of impeaching his credibility. La.R.S. 14:495. Technically, the defendant's three prior convictions were in evidence before the jury for the limited purpose of assisting it in evaluating his credibility.
Under these limited circumstances, (a) where the convictions were properly before the jury in connection with the defendant's credibility and (b) where the prosecutor's brief and passing reference to them in argument was limited to their applicability to the defendant's credibility, we are not prepared to hold that the trial court committed error by failing to grant a *768 mistrial for a violation of Article 770. However, since without a strict admonition the jury may easily accept such an argument as tending to prove the defendant's guilt instead of his lack of credibility, and because in the absence of the restraint shown by the present prosecutor such a reference may easily constitute a violation of Article 770, such reference in the state's argument to the jury is not encouraged.
3. Other Bills
The remaining bills present no serious issue of error:
Bill Nos. 1-8: The trial court committed no error in denying the motion for a bill of particulars for pre-trial discovery of the details of the state's case. State v. George, La., 298 So.2d 760 (decided this date).
Bill No. 9: No prejudicial error was committed when the court sustained an objection by the state to a question asked by defense counsel. The question attempted to elicit an opinion of the witness when (out of the presence of the trial jury) the state was laying a foundation for the introduction, as voluntary, of an oral inculpatory statement given by the defendant soon after his arrest.
Bills Nos. 10 and 11: The trial court did not commit error in its ruling that the oral inculpatory statement made by the defendant was admissible in evidence. The statement was given after the defendant had been arrested as he drove up to his home and after he had been taken to the courthouse some fifteen minutes away. He did not object in any way to accompanying the officers. He was not asked, nor did he make, any statements during the trip. Before he was questioned or gave any statement, the defendant was given the Miranda warnings. The evidence supports the trial court's finding that the evidence was given freely and voluntarily.
Bill No. 12: The defendant objected to the qualification of a defense witness as an expert in the field of criminology. He was a college graduate with a chemistry degree, but he had taken no university courses in criminology. The witness possessed nine years' experience as a member and supervisor of the state's crime laboratory. The competency of an expert is a question of fact. The trial judge has a wide discretion in passing upon the qualifications of such a witness, which will not be disturbed on appeal in the absence of manifest error. La.R.S. 15:466; State v. Richmond, 278 So.2d 17 (La.1973). We find no abuse of discretion here.

Decree
For the reasons assigned, we affirm the conviction and sentence.
Affirmed.
MARCUS, J., concurs.
DIXON, J., concurs with reasons.
BARHAM, J., dissents and assigns reasons.
DIXON, Justice (concurring).
It is not necessary at this time to decide "that the mere fact that notes were taken and referred to by a member of the jury does not, if proved, constitute reversible error." That much of the opinion is not necessary to a decision of the issues. We need only follow R.S. 15:470. There is no Louisiana case which conflicts with this statutory policy. Without juror testimony, there is no evidence in this case of jury misconduct.
Nor can I subscribe to the treatment of Bills Nos. 13 and 14. The prosecutor's reference to the three prior burglary convictions was not inappropriate, nor should it have required a cautionary instruction from the judge.
*769 BARHAM, Justice (dissenting).
The majority has, without constitutional bases, deleted C.Cr.P. Art. 793 from our law. I do not argue that this particular legislative statement of its will is the best reasoned, most logical or correct statement of what the law should be. However, without some constitutional authority to strike it from the Code of Criminal Procedure, this particular legislative enactment is valid and binding upon this Court. It states unequivocally that a juror must rely upon his memory in reaching a verdict and that "He shall not be permitted to refer to notes or to have access to any written evidence." (Emphasis here and elsewhere supplied.) The majority admits that there was a substantial violation of this provision in the case at hand. This proof of misconduct on the part of one of the jurors is unequivocal and uncontradicted. The proof is from the testimony of the jurors. We are required to reverse when there has been a substantial violation of a statutory right. C.Cr.P. Art. 921.
Although evidence was taken at the trial level from the jurors to prove the fact that one of the jurors did refer to and use notes during jury deliberation, the majority raises the question of the right to impeach jury verdicts by the testimony of jurors.
Recently, in writ denial in State v. Johanson, 294 So.2d 831, decided May 24, 1974, the action of the majority of this Court reflected that it apparently believed the policy of our statute, R.S. 15-470, was so important that the testimony of trial jurors, if objected to, is inadmissible to prove that notes were referred to during jury deliberations in contravention of C.Cr.P. Art. 793. Mr. Justice Tate, the writer of the majority opinion here, and I, dissented in that writ denial.
I am firmly convinced that R.S. 15:470, which provides that no juror "* * * is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach * * * any verdict, * * *" is not meant to close the lips of jurors as to all acts of misconduct during jury deliberations. The majority has made an excellent study of the evolution of the different rules which have been applied relative to receiving the testimony of jurors for the purpose of impeaching jury verdicts. It has cited the correct Louisiana jurispurdence. I would expand only slightly upon the majority's reasoning:

Impeachment of Jury Verdicts
The common formula relative to impeachment of jury verdicts has been stated as "a juror's testimony or affidavit is not receivable to impeach his own verdict." 8 Wigmore, Evidence, § 2345 (McNaughton Rev.1961). Wigmore criticizes this rule of thumb as `* * * neither strictly correct as a statement of the acknowledged law nor at all defensible upon any principle in this unqualified form. * * *" The professor analyzes this general rule in terms of three independent principles dealing with petit jury verdicts.
1. Privileged communicationsthis relates to the genuine evidentiary privilege protecting communications made between jurors during deliberations.
2. Parol evidencea verdict, like a contract, is an operative act, and parol evidence rules would render inadmissible negotiations and motives leading up to the act itself.
3. Self-stultifying testimony (Lord Mansfield's rule)this would forbid any attempt by a juror to prove his own misbehavior, "nemo turpitudinem suam allegans audietur."
The scope of the privileged communication principle is limited, mattering only where what was actually said during deliberations is in issue. Acts of misconduct would not be privileged under the principle. Wigmore, supra, § 2346 notes the differences in application of the three principles:
"It remains, however, to notice the practical differences between the application *770 of the present principle of privilege, on the one hand, and, on the other, the ensuing principles of the parol evidence rule and Lord Mansfield's rule:
"(1) The parol evidence rule and Lord Mansfield's rule have their applications only when jurors' testimony is offered to prove facts in some way affecting their verdict. But under the privileged communications rule the juror's testimony would be excluded for any purpose whatever, for example, where upon another trial he was a witness and his bias was offered to be shown by his expressions during retirement with the former jury. The privilege may have a larger scope than the other rules.
"(2) Under Lord Mansfield's rule the juror's testimony is excluded in proving either his own misconduct or a fellow juror's, but under the privileged communications rule the former is obviously not excluded where the juror makes voluntary affidavit. Contrariwise, in the few jurisdictions which do not accept the rule prohibiting proof of misconduct, the juror might still be prevented from disclosing a fellow juror's communications unless the latter consented.
"(3) Under the parol evidence rule and Lord Mansfield's rule the prohibitions, so far as they exist at all, are absolute and independent of the juror's consent, but under the privileged communications rule there is nothing left to prohibit if the privileged juror once consents."
In applying the parol evidence rule to a jury's verdict, several situations are possible: (a) the jurors' deliberations preceding the verdict, (b) the issues submitted to a jury, (c) the jury's failure to obey formalities of conduct. It is with reference to (c), to which the parol evidence rule would not apply to exclude, that Lord Mansfield's rule has been applied. Wigmore says of this:
"There is, however, a rule of evidence, now generally but improperly accepted, that the fact of informality, so far as it involves improper conduct by the jurors, shall not be proved by one of the jurors themselves. This rule has nothing to do, in principle, with the trial rules of informality nor with the parol evidence rule permitting informalities to be established." Wigmore, supra, § 2348.
This doctrine that a witness shall not be heard to allege his own turpitude was applied first to the situation of jury misconduct by Lord Mansfield in Vaise v. Delaval, 1 Term R. 11 (K.B. 1785). Before this decision, the unquestioned practice had been to receive jurors' testimony on affidavits without scruple. Wigmore, supra, § 2352; Note, 53 Marquette L.Rev. 258 (1970) at 260-261.
The actual rule of Vaise distinguished between jurors whose testimony was excluded and third persons whose testimony was not:
"The court cannot receive such an affidavit from any of the jurymen themselves, in all of whom such conduct is a very high misdemeanor; but in every such case the Court must derive their knowledge from some other source such as some person having seen the transaction through a window or by some other means."
Justification for the rule has been based largely on policy reasons. The U. S. Supreme Court in McDonald v. Pless, 238 U. S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915), stating that a policy choice must be made between the interest of the litigant in redressing injury and the double public interests of finality of verdicts and freedom and frankness in reaching them, chose the latter.
However, broad application of this rule has been soundly criticized, especially in the situation where it is misconduct or overt acts which is sought to be proved. See Note, 53 Marquette L.Rev. 263-268; Wigmore, supra § 2353. One of the leading cases distinguishing the application of the broad application of the rule is Wright *771 v. Illinois & Miss. Tel. Co., 20 Iowa 195 (1866). The so-called "Iowa" rule was enunciated:
"While we do not feel entirely confident of its correctness, nor state it without considerable hesitation, yet we are not without that assurance, which, under the circumstances, justifies us in laying down the following as the true rule: That affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself, as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average or by lot, or game of chance or other artifice or improper manner; but that such affidavit to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood the instructions of the court; the statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast.
"That the verdict was obtained by lot, for instance, is a fact independent of the verdict itself, and which is not necessarily involved in it. While every verdict necessarily involves the pleadings, the evidence, the instructions, the deliberation, conversations, debates and judgments of the jurors themselves; and the effect or influence of any of these upon the juror's mind, must rest in his own breast, and he is and ought to be concluded thereon by his solemn assent to and rendition of the verdict (veredictum a true declaration). To allow a juror to make affidavit against the conclusiveness of the verdict by reason of and as to the effect and influence of any of these matters upon his mind, which in their very nature are, though untrue, incapable of disproof, would be practically to open the jury room to the importunities and appliances of parties and their attorneys, and, of course, thereby to unsettle verdicts and destroy their sanctity and conclusiveness.
"But to receive the affidavit of a juror as to the independent fact that the verdict was obtained by lot, or game of chance or the like, is to receive his testimony as to a fact, which, if not true, can be readily and certainly disproved by his fellow jurors; and to hear such proof would have a tendency to diminish such practices and to purify the jury room, by rendering such improprieties capable and probable of exposure, and consequently deterring jurors from resorting to them. The ground upon which affidavits of jurors were excluded in the case of Vaise v. Deleval, supra (which is the leading case and contrary to prior decisions), is not more than satisfactory. Lord MANSFIELD said: `The court cannot receive such an affidavit from any of the jurymen themselves, in all of whom such conduct is a high misdemeanor; but in every such case the court must derive their knowledge from some other source; such as from some person having seen the transaction through a window or by some such other means.'
"While it is certainly illegal and reprehensible in a juror, to resort to lot or the like to determine a verdict, which ought always to be the result of a deliberate judgment, yet such resort might not evince more turpitude tending to the discredit of his statement than would be evinced by a person not of the jury, in the espionage indicated by Lord MANSFIELD and necessary to gain a knowledge of the facts to enable him to make the affidavit. At all events the superior opportunities of knowledge and less liability to mistake, which the juror has *772 over the spy, would entitle his statement to the most credit. And if, as is universally conceded, it is the fact of improper practice which avoids the verdict, there is no reason why a court should close its ears to the evidence of it from one class of persons, while it will hear it from another class, which stands in no more enviable light and is certainly no more entitled to credit.
"Nor does the consideration of the affidavits of jurors for the purposes stated, contravene sound public policy. It is true, however, that public policy does require that when a juror has discharged his duty and rendered a verdict, such verdict should remain undisturbed and unaffected by any subsequent change of opinion upon any fact or pretext whatever; and, therefore, a juror should not be heard to contradict or impeach that which, in the legitimate discharge of his duty, he has solemnly asserverated. But when he has done an act entirely independent and outside of his duty and in violation of it and the law, there can be no sound public policy which should prevent a court from hearing the best evidence of which the matter is susceptible, in order to administer justice to the party whose rights have been prejudiced by such unlawful act. In other words, public policy protects a juror in the legitimate discharge of his duty, and sanctifies the result attained thereby; but if he steps aside from his duty, and does an unlawful act, he is a competent witness to prove such fact, and thereby prevent the sanction of the law from attaching to that which would otherwise be colorably lawful."
The basic distinction in Wright was between matters which "inhere in the verdict" and those that do not. Stated otherwise, the distinction might be between the motives, methods, or processes by which the verdict was reached and the existence of conditions or occurrences of events bearing on the verdict. State v. Kociolek, 20 N.J. 92, 118 A.2d 812 (1955). See Note, 56 Col.L.Rev. 952 (1956). That the drawing of the distinction may be less than perfectly precise should not detract from the validity of this rule, which at least allows an examination of the particular situation to determine whether the testimony should be admitted, rather than blanket exclusion.
The approved draft of the ABA Standards relating to Trial by Jury (1968) states:
"5.7 Impeachment of the verdict.
(a) Upon an inquiry into the validity of a verdict, no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined.
(b) The limitations in subsection (a) shall not bar evidence concerning whether the verdict was reached by lot.
(c) Subject to the limitations in subsection (a), a juror's testimony or affidavit shall be received when it concerns:
(i) whether matters not in evidence came to the attention of one or more jurors, under circumstances which would violate the defendant's constitutional right to be confronted with the witnesses against him; or
(ii) any other misconduct for which the jurisdiction permits jurors to impeach their verdict."
The state law on the subject is discussed by Wigmore, supra, § 2354. Those jurisdictions where the Iowa rule is accepted are: Federal, Florida, Iowa, Kansas, Nebraska, New Jersey, North Dakota, Ohio, Oregon, Tennessee, Texas, Washington, Wisconsin. See § 2354, n. 1. In the other jurisdictions Lord Mansfield's rule seems to be settled law.
*773 The applicable Louisiana statute is R.S. 15:470, which states:
"§ 470. Jurors incompetent to impeach finding; rebuttal of attacks
No juror, grand or petit, is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member."
Despite the language, it is submitted that this is not a rule of absolute incompetency, but is rather a reflection of policy. State v. Kifer, 186 La. 674, 173 So. 169 (1937) supports this conclusion. In that case we stated:
"The rule forbidding the juror, whether grand or petit, from impeaching his finding or verdict, is based on public policy, but we think it is equally a matter of public policy, besides being a right expressly granted the accused by law, that `no district attorney or other person shall be present during the deliberations of the grand jury on their findings.'
"The reason for this rule is that if the district attorney or any one else should be permitted to be present during the deliberations of a grand jury, the vote of members of the grand jurors might be influenced by his presence, and it is our opinion that public policy is more concerned in seeing that no one should interfere with the deliberations of a grand jury during its findings than in preventing its members or the district attorney from testifying in cases of this kind. Moreover, we think that it was not the intention of the Legislature to preclude such testimony under the provisions of articles 470 and 471 of the Code of Criminal Procedure.

"We therefore conclude that the trial judge should have permitted the grand jurors to testify as to whether or not the district attorney was present during their deliberations on the finding of the indictment, which charged the defendant with the crime of rape."
Kifer recognizes the conflicting interests involved: That of the litigant seeking individual redress versus that of the public in finality of verdicts and verdicts reached through free and open deliberation. The interest of the individual on balance prevailed and the testimony of the jurors was allowed.
I cannot conclude, from the majority's discussion of the issue of the competency of jurors to impeach their own verdict by their testimony of misconduct, whether it has laid sown an ironclad rule in this regard or whether it has simply used that statute to fortify the result obtained here. If the majority of this Court believes that jurors are never competent to testify to misconduct in the jury room, it would effectively permit bribery, force, intimidation, and other gross acts of misconduct to distort justice to the detriment of the State and the accused. I am of the opinion that our statute permits us to draw the distinction between an inquiry into the motives, methods or processes by which the verdict was reached and an inquiry into the existence of conditions or occurrences of events which affected the verdict.
In the particular case at hand, if we are trying to determine the overriding policy consideration as expressed by legislative will, I would have to conclude that C.Cr.P. Art. 793 is controlling over R.S. 15:470. The codal prohibition against referring to notes can only be effectively enforced by the use of testimony from the jurors themselves. Only they will know whether or not notes were referred to during the deliberations. It is an act or occurrence which, in the case at hand, had bearing upon the jury deliberations and their rendition of a verdict.
I respectfully dissent from the majority holdings.
NOTES
[1] E. g.,; "Didn't detectives testify Ledet [the defendant] picked up victim [Duplantis] on Hwy. 90by questioning Ledet." This note apparently referred to Ledet's trial testimony that Duplantis had stopped him at the corner of Pitre and Tupelo in town and asked him to take Duplantis to New Orleans to apply for overseas work, after which they left town and took Highway 90 to Harvey, La., some fifty or so miles away.
[2] E. g.: "Knew & remembered things too clearly & readily after almost 1 yr.wanted to rem. only some things"; "Had criminal rec."; "Could't or didn't want to explain blood on boots & car"; "Detectives testified he told his wife to wash his boots and dispose the pictures". (The latter reference was to pictures of the victim's daughter, previously in his wallet, which were found at the defendant's home and which the defendant testified the victim had given to him during their drinking spree).
[3] See, e. g., his testimony at Tr. 85:

"A. Well, we were discussing different points of the case, and some of the jurymen wasn'tthey said, well you know, didn't something like that transpire. And I happened to look, and it was on my notes. You know, maybe one juror said this.
"Q. So the matters that were unclear for the other jurors, you explained to them from your notes? Is that correct?
"A. No, no. I had taken the notes and one of the jurors had asked me, didn't the detective testify that somethingand I said yes. I just happened to have it on my notes. And then one of the other jurors said, yes, that's right, too."
Or again, his testimony at Tr. 87:
"Q. Did any of the jurors ask you specifically, on a point that may have been in dispute or in discussion, what your notes reflected on that point?
"A. Not exactly, Like I said before, one of them wanted to know what was one of them's testimony, and I think I had just happened to write it down, and I said, "Well, this was it". After I said that, I said "Was that it"? I asked the jurors and they said yes, that was it.
"Q. Let's take that instance. Were you saying, no, this was it because of what you had taken down, or were saying no, this was it because of an independent recollection of it?
"A. No, I had a recollection of it."
[4] La.C.Cr.P. art. 793 in full provides:

"A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict."
So far as we can ascertain, the prohibition against note-taking has only been considered in two reported Louisiana decisions. In State v. Clark (Docket No. 54,220, decided April 29, 1974), a juror's note-taking was held not to be reversible error, where defense counsel knew about it and did not object to it before the jury retired and reached a verdict. In State v. Joseph, 45 La.Ann. 903, 12 So. 934 (1893) likewise a conviction was not reversed, where the notes had been taken by a juror but not used by him.
[5] Thornton v. Weaber, 380 Pa. 590, 112 A.2d 344 (1955).
[6] As the cited sources also show, other reasons given for the policy are:

(1) Since all jurors do not possess the same note-taking abilities, the skilled note-taker will have a marked advantage in influencing other jurors;
(2) The process of note-taking diverts attention;
(3) During deliberation, too much weight may be given notes;
(4) Conflicts of memory may be settled by inaccurate notes;
(5) Unimportant evidence may be emphasized;
(6) Evidence as to which notes are taken may be given greater attention than equally important evidence as to which notes are not taken.
[7] The cited sources list the following as among the reasons advanced to support the propriety of note-taking by jurors:

(1) Judges, experienced in the art of hearing and weighing evidence, take notes; why shouldn't jurors?;
(2) A faulty memory can be refreshed by notes;
(3) A person with a sharp memory could exert as much influence as a sharp note-taker;
(4) Notes may be necessary in long, detailed trials.
[8] Standard 4.2 ("Note taking by jurors"):

"Jurors may take notes regarding the evidence presented to them and keep these notes with them when they retire for their deliberations. Such notes should be treated as confidential between the juror making them and his fellow jurors."
[9] La.R.S. 15:470 in full provides:

"No juror, grand or petit, is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member."
[10] This was the sole issue before this court, when after full discussion a majority of this court denied supervisory writs in State v. Johanson, 294 So.2d 831 (decided May 24, 1974). Mr. Justice Barham and the writer dissented; Mr. Justice Calogero did not take part.
[11] It is named after the leading American decision of Wright v. Illinois & Miss. Tel. Co., 20 Iowa 195 (1866), which first persuasively enunciated it.
[12] Standard 5.7 provides:

"Impeachment of the verdict.
"(a) Upon an inquiry into the validity of a verdict, no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined.
"(b) The limitations in subsection (a) shall not bar evidence concerning whether the verdict was reached by lot.
"(c) Subject to the limitations in subsection (a), a juror's testimony or affidavit shall be received when it concerns:
"(i) whether matters not in evidence came to the attention of one or more jurors, under circumstances which would violate the defendant's constitutional right to be confronted with the witnesses against him; or
"(ii) any other misconduct for which the jurisdiction permits jurors to impeach their verdict."