LABORDE, Judge.
Defendant, Randolph Matthieu, was charged by grand jury indictment with second degree murder, LSA-R.S. 14:30.1. Ten jurors of twelve voted to convict defendant as charged. Following the jury verdict, defendant was sentenced to serve life in prison without benefit of pardon, parole, or suspension of sentence. On appeal, defendant alleges four assignments of error.
ASSIGNMENT OF ERROR NUMBER 1
Defendant contends the trial court erred in allowing the introduction of evidence concerning his alleged flight from the state. Defendant complains of three instances during trial which mentioned the alleged flight. The first instance was during voir dire. While the prosecution did make mention of defendant’s alleged flight during voir dire, it was defense counsel who raised the issue. During the state’s opening statement, the prosecution again mentioned defendant’s alleged flight. The final instance occurred when the prosecution called Bob Johnson, of the Lafayette Police Department, to testify regarding defendant’s alleged flight.
On June 20, 1983, defendant obtained an order from Judge Broussard, of the Fifteenth Judicial District Court, allowing him to leave the State of Louisiana to seek employment. Although not stated in the motion or the order, the prosecution contends defendant was under an obligation to keep his bondsman abreast of his current address so that he could be served with notices of court dates. As a result of defendant’s failure to appear for motions set in the pending murder trial, a fugitive warrant was issued on August 11,1983, for his arrest. Despite continuing efforts by the Lafayette Police Department, defendant was not located until early 1986 when he was arrested in California and returned to Louisiana to stand trial.
Defendant relies on State v. Lee, 381 So.2d 792 (La.1980), to show that the trial court committed reversible error in not granting a mistrial. While in route from the jail to the hospital, one of the defendants (Harris) jumped from the police car and unsuccessfully attempted to flee. On cross-examination, the prosecution asked Harris about his attempted escape. Although defendant’s motion for mistrial based on the prosecutor’s question was denied, the trial judge did admonish the jury to disregard the remark. Defendant’s actions constituted the crime of simple escape which is defined, inter alia, as the “intentional departure, under circumstances wherein human life is not endangered, of a person ... from the lawful custody of any law enforcement officer_” La.R.S. 14:110 A(1).
“Other crimes” evidence which forms part of the res gestae is admissible. Lee, 381 So.2d at 794. Additionally, evidence of “other crimes” designed to avoid punishment is admissible to show admission of guilt by conduct as long as the applicable safeguards are followed. Id. In finding reversible error in the trial judge’s denial of the motion for mistrial, the court stated:
“[W]e conclude that the evidence of attempted escape by Harris did not form part of the res gestae, that it had no significant probative value as circumstantial evidence of his guilt, a[n]d that its prejudicial effect clearly outweighed its probative value. Defendant’s flight, a momentary departure from a vehicle transporting him from jail to a hospital for treatment which occurred over six weeks after his arrest for armed robbery, was not significantly probative of his guilt, since it may have been motivated by many other reasons, such as prison *532 or hospital conditions, a simple desire for freedom, or a lack of confidence in his right to a fair and speedy trial.”
Id. The holding of Lee is inapplicable to the facts of the instant case because defendant’s act in leaving the state does not constitute evidence of another crime. Since defendant left the state with the permission of the district court, his leaving should not be considered “another crime.” Therefore, the admissibility of the evidence would not be governed by Lee.
In State v. Molinario, 383 So.2d 345 (La.1980), after remand, 400 So.2d 596 (La.1981), cert. den., 449 U.S. 882, 101 S.Ct. 232, 66 L.Ed.2d 106 (1980), defendant’s bond was forfeited when he failed to timely appear in court. He was later extradited from Florida. Defendant assigned as error the admittance of testimony regarding his alleged flight as it constituted evidence of another crime. The court agreed that evidence of the alleged flight was evidence of another crime, i.e., jumping bail under LSA-R.S. 14:110.1. In finding no error in admitting the evidence, the court concluded the evidence of flight was relevant to prove consciousness of guilt and its probative value outweighed its prejudicial effect. Again, the facts in the instant case are distinguishable from Molinario because defendant herein left this state with the court’s permission. Given this permission, defendant did not commit the crime of jumping bail as did the defendant in Moli-nario.
In conclusion, evidence of defendant’s absence from the state did not constitute evidence of another crime. Therefore, the line of cases restricting admissibility of “other crimes” evidence is inapplicable. Further, any error in admitting evidence of defendant’s withdrawal from the state is harmless as prejudice was not demonstrated. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER 2
Defendant assigns as error the introduction of State’s Exhibit No. 3, a photograph of the victim’s body. According to defendant, the prejudicial effect of the photograph outweighs any probative value.
Jim Craft, of the Lafayette City Police Department, was asked to identify the photograph. In response to that request, Investigator Craft stated, “This is a close up shot of the victim’s head depicting the large laceration on his neck, and the condition of the body as it was found after being taken out of the water.”
Dr. Glenn Larkin performed the autopsy on the victim and was called to testify regarding the wounds received by the victim. One of three gunshot wounds penetrated the victim’s left forearm. A second bullet entered the left side of the victim’s face, traveled through the head and was recovered in the muscle of the right side of the jaw. The final gunshot wound entered the chest area, traveled through the chest and abdomen, and was recovered in the muscles just outside of the chest wall. In addition to being shot three times, the victim was stabbed numerous times. The entry point of one stab wound was the right side of the victim’s body approximately 50 centimeters from the top of the head. A second stab wound bounced off a vertebra and did not penetrate into the chest. There were several slash wounds on the back which did not go deep into the chest. The victim’s throat was slit almost from ear to ear on the front of the neck. Where the back and neck join, there was another severe slash.
Photographs of the victim’s body are generally relevant to prove corpus de-licti; to corroborate other evidence of the manner in which death occurred; to establish the location, severity and number of wounds; and to establish the identity of the victim. State v. Huntley, 418 So.2d 538, 542 (La.1982), cert. den., 459 U.S. 1112, 103 S.Ct. 744, 74 L.Ed.2d 964 (1983). If the probative value of the photograph outweighs its inflammatory or prejudicial effect, the photograph is admissible. Id. “A trial court’s ruling with respect to the admissibility of allegedly gruesome photographs will only be disturbed if the prejudicial effect of the photographs clearly outweighs their probative value.” Id. at 543.
*533 State’s Exhibit No. 3 depicts the large gash wound to the front of the victim’s neck and what appears to be the gunshot wound to his face. Dr. Larkin opined that the wound to the throat occurred postmortem and that the gunshot wound to the face was not immediately fatal.
The photograph is probative to prove corpus delicti and the severity, location and number of wounds. It also tends to corroborate the pathologist’s testimony. Although the photograph is graphic, it is not so “gruesome” that its prejudicial effect outweighs its probative value. The trial judge’s ruling is not clearly wrong and will not be disturbed. Therefore, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER 3
Defendant contends that the trial court erred in allowing jurors to take notes during the trial. Defense counsel brought this conduct to the judge’s attention by objection, i.e., that two jurors were taking notes during the trial. The trial judge overruled the objection and stated that he understood the law to merely prohibit jurors from using notes during deliberation. La.C.Cr.P. art. 793 provides “A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence.”
In State v. Ledet, 298 So.2d 761 (La.1974), writ of mandamus denied, 315 So. 2d 39 (La.1975), defendant filed a motion for new trial alleging jurors had taken notes during trial and referred to the notes during deliberations. A hearing on the motion was held at which two jurors testified regarding the note taking. While the two jurors testified the notes were not shown to the other jurors, one of the two testified he used the notes to verify his recollection of testimony. Both jurors testified the references to the notes did not influence the verdict.
Following the hearing, the trial judge denied the motion for new trial because the note taking incident was harmless error. On appeal, the Supreme Court agreed with the trial judge and stated:
“Although references to notes by a juror is prohibited, we do not find that such use of notes by a juryman is inherently prejudicial or violative of any fundamental right of an accused designed to aid him to obtain a fair trial. In the absence of connivance by the state, we are unwilling to hold that the use of notes by a juror is, per se, ‘prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right’, La.C.Cr.P. art. 921, so as to be reversible error under such cited code article.”
Id. at 764. Underlying the court’s decision is the fact that greater importance is placed on the policy behind LSA-R.S. 15:470 than the policy behind the prohibition on note taking. LSA-R.S. 15:470 makes a juror incompetent to testify regarding his misconduct or the misconduct of his fellow jurors.
In the instant case defendant complains of the fact that the judge, upon being notified two jurors were taking notes, failed to confiscate the notes or to instruct the jurors not to refer to the notes during deliberations. However, there is no proof in the record that the jurors took the notes into the deliberation room or referred to the notes during deliberations. In Ledet, there was testimony by two jurors that notes were referred to during deliberations, yet the court held it was harmless error. In the instant case, the record is devoid of proof that the notes were used during deliberations. Further, defendant has presented no evidence that he was prejudiced. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER 4
In this final assignment of error, defendant contends that his sentence is improper. After his conviction of second degree murder, defendant was sentenced to serve life in prison, without benefit of pardon, parole or suspension of sentence. Under LSA-R.S. 14:30.1, the penalty for second degree murder is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant contends *534 the trial judge had no authority to impose the sentence without the benefit of pardon.
The law on this issue is well settled. Article 4, section 5 of the 1974 Louisiana Constitution vests the power to grant pardons and commutations of sentences with the governor. The power vested in the governor may not be precluded by the terms of an imposed sentence. State v. Anthony, 346 So.2d 707 (La.1977); State v. Huntley, 438 So.2d 1188 (La.App.3d Cir.1983). As the trial judge imposed a sentence without the benefit of pardon, the sentence is improper and must be corrected. It is not necessary to remand this case for resentencing as defendant’s sentence is mandatory leaving no discretion to the trial court. See State v. Gayden, 452 So.2d 783 (La.App. 4th Cir.1984). We, therefore, amend defendant’s sentence to conform to the terms of the statute, LSA-R.S. 14:30.1, under which he was convicted.
For the foregoing reasons, the conviction of defendant is affirmed. The life sentence imposed by the trial court is amended to provide that it shall be served without benefit of parole, probation or suspension of sentence.
AFFIRMED AS AMENDED.
GUIDRY, J., concurs.